Concord District Court
No. 80-240

SHARON L. BAKER

v.

DENNIS BROWN REALTY

August 5, 1981

*Stein & Viles*, of Concord (*Robert A. Stein* on the brief and orally), for the plaintiff.

*Myers & Laufer*, of Concord (*Terrie L. Harman* on the brief and orally), for the defendant.

BROCK, J.   This case is an action in tort for the intentional interference with a prospective contractual relationship brought by a prospective purchaser of certain real estate against the seller's real estate agent. The Concord District Court (*Robbins*, J.) found for the plaintiff and entered a judgment of $3,525.29. On the defendant's appeal, we affirm in part.

In June 1978, the plaintiff, Sharon Baker, was seeking to purchase a home in  Concord and enlisted the services of Keeler Family Realty. An agent of that firm, Jody Keeler, examined the listings in the Multiple Listing Service and found a home that he thought could be of interest to the plaintiff. Because the defendant, Dennis Brown Realty, held an exclusive listing authorization from the home's owner, Sarah Landry, the plaintiff's real estate agent contacted the defendant firm to arrange for the plaintiff to be shown the home.

On June 22, 1978, the home was shown to the plaintiff by her own agent and an agent of the defendant firm, Faye Olson. In the event that the plaintiff was to purchase the home, the two real es-

tate agencies involved would share equally in the sales commission under a co-brokerage agreement.

Upon seeing the property, the plaintiff immediately decided that she wished to buy it and offered $26,900, the *full* asking price. The two agents immediately drafted an unconditional purchase and sale agreement, which the plaintiff signed.

At about the same time another agent from the defendant firm, Douglas Bush, arrived on the premises. He informed the plaintiff and her agent that only the full asking price would be acceptable to the seller and asked to see the purchase and sale agreement. After reviewing the document, Mr. Bush insisted that two conditions be added to the agreement; bank financing and the sale of the plaintiff's home. Due to the plaintiff's particular situation, both she and her own agent advised Mr. Bush that these conditions were not necessary because she already had obtained bank financing for up to $33,000. Mr. Bush insisted, however, and she finally acquiesced to his demands.

By this time Faye Olson, the other agent of the defendant firm, had already cancelled other appointments that she had made to show the home. Twenty minutes later, however, Mr. Bush showed the home to his own clients, the Piars. He informed the Piars that there was an outstanding offer for the full asking price, and the Piars then offered $300 more. Mr. Bush then prepared a purchase and sale agreement for the Piars (buyers) to sign. Although he inserted a condition in the offer relating to bank financing, he did not insert a condition for the sale of the Piars' home, a term he had insisted be placed in the plaintiff's offer. The Piars' offer and the plaintiff's offer were then communicated to the seller without anyone from the defendant firm notifying the plaintiff that a higher offer had been made for the home. Mr. Bush did not tell the seller about the possibility of obtaining a higher offer from the plaintiff and the seller accepted the Piars' offer. Because the Piars had dealt exclusively with the defendant firm the entire sales commission went to the defendant, and Mr. Bush received 35 percent of that commission. Even if the plaintiff had made a higher offer and eventually purchased the home, the defendant firm and Mr. Bush would have received a substantially smaller commission due to the co-brokerage agreement.

The plaintiff was ultimately able to purchase a similar property in the same neighborhod, but at a price $3,100 greater than the amount that she had offered to purchase the Landry home.

■ At the outset, we note that there is no transcript of the trial, and our review is therefore limited to determining whether or not there are any errors of law apparent on the face of the record. *McCrady v. Mahon*, 119 N.H. 247, 248–49, 400 A.2d 1173, 1174 (1979); *see Saucier v. Saucier*, 121 N.H. 330, 430 A.2d 131 (1981).

■ The defendant first argues that an offer to purchase real estate creates no legally protected interest or right if the offer is in fact not accepted. In support of this argument the defendant relies upon RSA 506:1, which states "[n]o action shall be maintained upon a contract for the sale of land unless . . . it is . . . in writing and signed by the party to be charged . . . ." However, the present action is not on the contract but rather is one in tort for the *intentional* interference with a prospective contractual relationship, *cf. Daley v. Blood*, 121 N.H. 256, 257, 428 A.2d 900, 901 (1981), an action that has been recognized in this State for some time, *see Russell v. Croteau*, 98 N.H. 68, 69, 94 A.2d 376, 377 (1953), and recently reacknowledged in *Bricker v. Crane*, 118 N.H. 249, 252, 387 A.2d 321, 323 (1978); *Lumley v. Gye*, 1853, 118 Eng. Rep. 749. *See also Hangar One, Inc. v. Davis Associates, Inc.*, 121 N.H. 586, 589, 431 A.2d 792, 794 (1981). "One who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another is liable to the other for the harm caused thereby." *Bricker v. Crane, supra* at 252, 387 A.2d at 323 (quoting RESTATEMENT OF TORTS § 766 (1939)) and *Russell v. Croteau supra; see* RESTATEMENT OF TORTS (Second) § 766B (1979).

The trial court, in ruling upon the parties' requests for findings of fact, found facts which clearly support its determination that the defendant's agent "purposely caused" the seller "not to enter into a business relation" with the plaintiff.

■ Once it has been established that the defendant induced or otherwise caused the seller not to enter into a contract with the plaintiff, a determination must be made as to whether the defendant's action was privileged. "An action for interference with contractual relations cannot succeed . . . where the defendant's actions were justified [or privileged] under the circumstances." *Bricker v. Crane*, 118 N.H. at 252, 387 A.2d at 323. As the seller's real estate agent, the defendant might have some degree of privilege in situations such as are involved here but certainly not an absolute one that would blanket him in complete immunity. Moreover, the burden is on the defendant to show that his actions were privi-

leged, and the trial court is "free to disbelieve any evidence tending to show a privileged occasion." *Wilko of Nashua, Inc, v. Tap Realty, Inc.*, 117 N.H. 843, 848, 379 A.2d 798, 802 (1977). Here, the trial court, after considering the evidence presented, ruled that the defendant's actions were not privileged. Because there is no transcript of the testimony below, we are in no position to say either that the trial court abused its discretion or that there was insufficient evidence to support its ruling.

Only one issue remains in this case and that is the question whether the damages awarded were speculative.

The trial court awarded the plaintiff the difference between the price she offered for the home, $26,900, and the price of a similar home, $30,000, which she purchased shortly thereafter in the same neighborhood. In addition, the plaintiff was awarded the difference between the financing costs on the anticipated mortgage on the subject premises and the financing costs on the mortgage she took out on the home she eventually purchased, plus the difference between the taxes assessed on the two homes. In total, she was awarded $3,525.29.

The defendant relies on *Zareas v. Smith*, 119 N.H. 534, 538–40, 404 A.2d 599, 602 (1979) for the proposition that a plaintiff is required to take steps to minimize his loss and that absent damages clearly foreseeable at the time, the plaintiff is limited to recovering only actual damages or net loss. *Zareas*, however, unlike the present action in tort, was a contract action. "[T]he scope of 'foreseeable,' and therefore recoverable damages is *narrower in a contract case than in tort.*" *Zareas v. Smith, supra* at 538, 404 A.2d at 601. (Emphasis added.) Speculative damage awards are, nevertheless, not proper in cases involving intentional interference with contractual relations, *see Wilko of Nashua, Inc. v. Tap Realty, Inc.*, 117 N.H. at 850, 379 A.2d at 803, although damages may be enhanced to reflect aggravating circumstances such as wanton, malicious or oppressive conduct on the part of the defendant. *Id.* We note, however, that the trial court in this case made no specific finding of aggravating circumstances that would justify such an award in this case. Furthermore, we note that the plaintiff made a conscious choice to make a smaller down payment on the second home. We find it inappropriate to allow the plaintiff to aggravate her own damages by deciding to pay a lower down payment and thereby increasing her monthly payments. We therefore consider the trial court's award of the difference between the mortgage rates as being too unforeseeable. We also consider the award based on the difference between tax assessments as being too speculative

because the difference between the two assessments may depend on a variety of factors.

■ The remaining element of damages is the trial court's award of the difference between the plaintiff's offer on the home and the cost of the one that she finally acquired, $3,100. It is the defendant's position that this award too is speculative because, had the defendant informed the plaintiff of the second offer on the home, a bidding contest or "auction" would have resulted, and it is impossible to determine where it would have stopped. No doubt there is some truth to this argument, and we cannot say with certainty what the result would have been had the defendant not isolated the plaintiff out of contention for the home. Nevertheless, " 'the difficulty of determining the sum which will recompense a person' wronged by another is no reason for not allowing the injured party damages." *McLaughlin v. Union-Leader*, 100 N.H. 367, 369, 127 A.2d 269, 271 (1956), *cert. denied* 353 U.S. 909 (1957) (quoting *Lee v. Dow*, 71 N.H. 326, 327, 51 A. 1072, 1073 (1902)).

■ In reviewing damage awards our concern is whether a "reasonable person could have returned such a verdict." *Steel v. Bemis*, 121 N.H. 425, 429, 431 A.2d 113, 116 (1981); *Pleasant Valley Campground v. Rood*, 120 N.H. 86, 90, 411 A.2d 1104, 1106 (1980). In this regard "the court may, in determining whether the proof meets the requirement of reasonable certainty, give due weight to the fact that the question [of damages] was 'made hypothetical by the very wrong' of the defendant." RESTATEMENT OF TORTS (Second) § 774A(c) Comment C (1979). Based upon this orientation to the problem, we find no error in the trial court's award of the difference between the plaintiff's offer and the price at which she later acquired a similar home in the same neighborhood.

*Judgment for the plaintiff in the sum of $3,100.*

BATCHELDER, J., did not sit; the others concurred.