Rockingham
No. 98-701

NATIONAL EMPLOYMENT SERVICE CORPORATION

v.

OLSTEN STAFFING SERVICE, INC.

August 15, 2000

*Coughlin, Rainboth, Murphy and Lown, P.A.*, of Portsmouth (*Bradley M. Lown* on the brief and orally), for the plaintiff.

*Rath, Young and Pignatelli, P.A.*, of Concord (*Andrew W. Serell* on the brief) and *Day, Berry & Howard, LLP*, of Boston, Massachusetts (*Jason W. Morgan* on the brief and orally), for the defendant.

GROFF, J. The plaintiff, National Employment Service Corporation (National), alleged that the defendant, Olsten Staffing Service,

Inc. (Olsten), violated a restrictive covenant in an employment contract between National and its employees and intentionally interfered with National's contractual relationship with its employees. Following a jury trial in the Superior Court (Galway, J.), National was awarded damages in excess of $20,000. On appeal, Olsten argues that the trial court erred in: (1) determining that the restrictive covenant was reasonable and enforceable; (2) failing to direct a verdict in its favor on National's claim of intentional interference with contractual relations; and (3) refusing to overturn jury verdicts that were conclusively against the weight of the evidence. We reverse.

National and Olsten are in the business of supplying temporary employees to industry. Prior to August 1994, National, Olsten, and several other temporary employment agencies supplied light industrial laborers to Watts Fluid Air Corporation (Watts) at its manufacturing facility in Kittery, Maine. National required its employees to sign employment contracts prior to commencing employment containing a restrictive covenant, which prohibited them from accepting "employment directly or indirectly at client company for a period of ninety working days following the termination of employment with National . . . ." Watts was considered a client company. In August 1994, Watts named Olsten as its exclusive, on-site, temporary employee provider. Olsten agreed, however, to permit National employees to continue their assignments at Watts.

In January 1995, the parties discussed a potential lay-off of National's employees, and a dispute arose as to the validity of any such lay-off. At that time, National informed Olsten of the restrictive covenant in its employees' contracts and warned Olsten that the contracts prohibited "agency jumping." On March 3, 1995, Olsten posted a bulletin at Watts informing employees that Watts would no longer be affiliated with National and that National employees who wished to remain at Watts could apply for a position through Olsten. Seven National employees applied to Olsten and were hired. Each employee had signed the employment contract containing the restrictive covenant prior to commencing an assignment at Watts.

National brought claims against Olsten for, among other things, breach of contract, intentional interference with contractual relations, and quantum meruit. At trial, Olsten moved to dismiss National's claim for intentional interference with contractual relations, which the court denied.

The jury returned a defendant's verdict on the breach of contract claim, but awarded National $11,882.01 on its quantum meruit claim and $8,750 on its claim for intentional interference with contractual

relations. Olsten's motion to set aside the jury verdicts and for a new trial was denied. This appeal followed.

■ Olsten first argues that the restrictive covenant in National's contracts with its employees is unreasonable and unenforceable.

> The public policy of New Hampshire encourages free trade and discourages covenants not to compete. Nevertheless, our courts uphold a limited restraint if reasonable as applied to the particular circumstances of the parties. A restraint on employment is reasonable only if it is no greater than necessary for the protection of the employer's legitimate interest, does not impose undue hardship on the employee, and is not injurious to the public interest.

*Concord Orthopaedics Prof. Assoc. v. Forbes*, 142 N.H. 440, 442-43, 702 A.2d 1273, 1275 (1997) (citation and quotation omitted). If a covenant violates any prong of the reasonableness test, it is unreasonable and unenforceable. *See id.* A covenant's reasonableness is a matter of law for this court to decide. *See Technical Aid Corp. v. Allen*, 134 N.H. 1, 8, 591 A.2d 262, 265 (1991).

"Covenants are valid only to the extent that they prevent employees from appropriating assets that are legitimately the employer's." *Concord Orthopaedics*, 142 N.H. at 443, 702 A.2d at 1276.

> Legitimate interests of an employer which may be protected from competition include: the employer's trade secrets which have been communicated to the employee during the course of employment; confidential information communicated by the employer to the employee, but not involving trade secrets, such as information on a unique business method; an employee's special influence over the employer's customers, obtained during the course of employment; contacts developed during the employment; and the employer business's development of goodwill and a positive image.

54A AM. JUR. 2D *Monopolies, Restraints of Trade and Unfair Trade Practices* § 917 (1996).

We have not considered the enforceability of a restrictive covenant absent the potential for appropriation of confidential information, trade secrets, customer lists, or company goodwill. In fact, we have found that a restrictive covenant cannot reasonably be ex-

tended to new patients, as opposed to existing patients, in the context of the medical profession because it would "contravene[] the principle of narrowly tailoring covenants not to compete to encompass only legitimate interests of the employer . . . [and] such an interpretation of legitimate interests does not foster the public good." *Concord Orthopaedics*, 142 N.H. at 444, 702 A.2d at 1276.

In this case, the sole "employer interest" articulated by National is the retention of employees for a sufficient period to enable it to recoup costs associated with "recruiting, interviewing, checking references, qualifying, insuring, and placing" its employees. All businesses, however, incur expenses in recruiting and hiring employees. National does not allege that the restrictive covenant was necessary to prevent its employees from appropriating the company's confidential information, trade secrets, or goodwill. Its employees were light industrial laborers who were not in a position to appropriate the company's goodwill and were without access to sensitive information. Post-employment restrictions on such employees would be contrary to public policy and would impose an undue hardship, particularly for at-will employees who could be discharged at any time.

■ Thus, we hold that although there may be valid reasons *for* restrictive covenants, the mere cost associated with recruiting and hiring employees is not a legitimate interest protectable by a restrictive covenant in an employment contract. Because National has not met the first prong of the reasonableness test, the covenant is unreasonable and unenforceable. *See Concord Orthopaedics*, 142 N.H. at 442-43, 702 A.2d at 1275.

Next, we address whether Olsten otherwise "wrongfully" or "improperly" interfered with the employment contract between National and its employees so as to incur liability for intentional interference with contractual relations. Olsten argues that because National did not prove wrongful or improper conduct, the trial court erred in failing to direct a verdict in its favor on this claim. We agree.

The trial court may direct a verdict "only if [it] determines, after considering the evidence and construing all inferences therefrom most favorably to the non-moving party, that no rational juror could conclude that the non-moving party is entitled to any relief." *Goodwin v. James*, 134 N.H. 579, 582, 595 A.2d 504, 506 (1991). We will uphold the trial court's ruling on a motion for a directed verdict absent an abuse of discretion. *See Vincent v. Public Serv. Co. of N.H.*, 129 N.H. 621, 625, 529 A.2d 397, 399 (1987).

■ In order to prove tortious interference with contractual relations, the plaintiff must prove that it had a contractual relationship with its employees, that the defendant knew of that relationship, and that the defendant wrongfully induced the employees to breach that contract. See Montrone v. Maxfield, 122 N.H. 724, 726, 449 A.2d 1216, 1217 (1982). "Only improper interference is deemed tortious in New Hampshire." Roberts v. General Motors Corp., 138 N.H. 532, 540, 643 A.2d 956, 961 (1994).

Olsten does not dispute the existence of a contractual relationship between National and its employees. Because the contract was silent as to the duration of employment, the contract created an at-will employment relationship. See Butler v. Walker Power, 137 N.H. 432, 435, 629 A.2d 91, 93 (1993).

Olsten admits that it may have been aware that National's employees had contracts prohibiting "agency jumping," but argues that it did not wrongfully induce those employees to breach their employment contracts. We have previously applied the RESTATEMENT (SECOND) OF TORTS to actions for tortious interference with contractual relations. See, e.g., Roberts, 138 N.H. at 540-41, 643 A.2d at 961 (applying sections 767 and 773). Section 768(1) of the RESTATEMENT (SECOND) OF TORTS provides that one does not improperly interfere with the existing or prospective contractual relations of a competitor, under a contract terminable at will, if:

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

A competitor "'may offer better contract terms, as by offering an [at-will] employee of the plaintiff more money to work for him . . . and he may make use of persuasion or other suitable means, all without liability." RESTATEMENT (SECOND) OF TORTS § 768 comment i (1979). See generally Annotation, Liability for Inducing Employee Not Engaged For Definite Term to Move to Competitor, 24 A.L.R.3D 821 (1969).

Everyone has a right to offer better terms to another's employees so long as the latter is free to leave, and in inducing such an employee to quit his employment or in

persuading him to enter his own employment, a third party acts within his legal rights and interferes with no contract relation in the sense here intended.

45 AM. JUR. 2D *Interference* § 65 (1969).

We hold that the mere fact that a competitor induces an at-will employee to leave his employer and work for that competitor does not in and of itself constitute interference with contractual relations. The employer must demonstrate an improper purpose, beyond lawful competition, on the part of the competitor or the employee. "It is unreasonable to restrict a[] [non-professional] employee to his current employer when he could do better elsewhere, especially when that employee could be discharged at will and without recourse." *Birmingham Television Corp. v. DeRamus*, 502 So. 2d 761, 766 (Ala. Ct. App. 1986).

█ Based on the evidence taken in the light most favorable to National, we conclude that Olsten did not tortiously interfere with National's contracts with its employees. Olsten did not employ wrongful means and acted with a purpose of advancing its interest in competing with National. Since the restrictive covenant is of no legal effect, National did not demonstrate that Olsten wrongfully induced its employees to breach their employment contracts. Thus, the trial court abused its discretion in failing to enter a directed verdict on National's claim for intentional interference with contractual relations, and the judgment for National on that claim is reversed.

██ The judgment for National on its quantum meruit claim is also reversed. A plaintiff is entitled to restitution for unjust enrichment if the defendant received a benefit and it would be unconscionable for the defendant to retain that benefit. *See Pella Windows and Doors v. Faraci*, 133 N.H. 585, 586, 580 A.2d 732, 732-33 (1990). Because the restrictive covenant was unenforceable and Olsten did not act wrongfully in employing National's employees, the facts do not support a finding of unjust enrichment.

In light of the result reached, we need not address Olsten's remaining arguments. *See Aranosian Oil Co. v. City of Portsmouth*, 136 N.H. 57, 61, 612 A.2d 357, 359 (1992).

*Reversed.*

BROCK, C.J., and HORTON and BRODERICK, JJ., did not sit; GRAY, J., retired superior court justice, specially assigned under RSA 490:3, was recused and did not sit; MCHUGH and GROFF, JJ.,

superior court justices, sat by special assignment pursuant to RSA 490:3; all who sat concurred.

Justices who did not sit did not, following oral argument, participate in discussions, decisions, votes, or preparation of the opinion in any way.