Moss v. Camp Pemigewasset, et al.    CV-01-220-M    10/10/01
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Stephen M. Moss,
      Plaintiff

      v.                                  Civil No. 01-220-M
                                          Opinion No. 2001 DNH 185
Camp Pemigewassett, Inc., Robert
L. Grabill, Alfred N. Fauver,
Bertha H. Fauver, Fred Fauver,
Jonathan Fauver, Thomas L. Reed,
Betsy M. Reed, Thomas L. Reed, Jr.,
      Defendants


                         **O R D E R**


      Stephen Moss, formerly the Head of Archery at Camp

Pemigewassett ("Pemi" or "the camp"), a summer camp for boys, has

brought this diversity action against: (1) the camp; (2) its

director, Robert Grabill; and (3) its board of directors.  In his

complaint, Moss alleges: (1) defamation, against Grabill (Count

I); (2) intentional infliction of emotional distress, against

Grabill (Count II); (3) tortious interference with prospective

contractual rights, against Grabill (Count III); and (4) civil

conspiracy, against all defendants (Count IV).  Before the court

is defendants' motion to dismiss (document no. 4).[1]  Plaintiff objects.  For the reasons stated below, the motion to dismiss is granted.

## Standard of Review

A motion to dismiss for "failure to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  When considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), the court must "accept as true all well-pleaded allegations and give plaintiffs the benefit of all reasonable inferences."  Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999) (citing Gross v. Summa Four, Inc., 93 F.3d 987, 991 (1st Cir. 1996)).  Furthermore,

---

[1] Although defendants' pleading is captioned as a motion to dismiss, it includes an affidavit and a number of exhibits. Because the pleading is captioned as a motion to dismiss, the court will treat it as such and disregard the material appended to it.

2

"[d]ismissal under FED. R. CIV. P. 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." Cooperman, 171 F.3d at 46 (citing Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989)).

**Factual Background**

Taken from Moss's complaint, and viewed in the light most favorable to him, the facts of this case are as follows. In 1999, Pemi invited Moss to serve as its Head of Archery. Under the terms of his agreement with Pemi, Moss was to work at the camp during his summer vacations, and, in exchange, was to receive out-of-pocket expenses, room and board, and camp uniforms, but no salary. In October 2000, after Moss had served as Pemi's Head of Archery for two seasons, he received a letter from the camp's director, Grabill, informing him that he was not invited back for the summer of 2001. No reason was given. Subsequently, Moss met with Grabill, who told him that he was not invited back because Grabill had received three complaints

3

against him for inappropriate contact with campers. According to Grabill, two of these complaints were from parents of campers, while the third had come "through the State of New Hampshire" (Compl. ¶ 19).

Later on, Grabill also told Charles Donovan, Pemi's Assistant Head of Nature and Bunk Counselor, that Moss had not been invited back because of complaints from parents and one complaint that had come "through 'the State of New Hampshire'" (Compl. ¶ 20). By letter dated April 4, 2001, Thomas L. Reed, Sr., a member of the Pemi board, told Moss that the State of New Hampshire had never made a complaint against him and that no person involved with the camp had ever reported Moss to the State. In his conversation with Donovan, Grabill also said that the existence of three actual allegations against Moss implied the existence of numerous other unreported incidents. At some point after Grabill informed Moss that he was not invited back to Pemi for the summer of 2001, Moss petitioned Pemi's board of directors for reinstatement. Despite having knowledge that the

4

State had made no complaint against Moss, and that Moss believed Grabill had misrepresented that fact, the board declined to invite Moss back to work at the camp.

**Discussion**

Given the court's decision to treat the pleading before it as a motion to dismiss – despite both parties' inclusion of affidavits along with their pleadings – the sole question before the court is whether Moss has stated any claims on which relief can be granted. The court considers each cause of action in turn.

I. Defamation

In Count I, Moss claims that Grabill defamed him by misrepresenting to Donovan that: (1) a complaint about Moss having inappropriate contact with campers had come to the camp through the State of New Hampshire; and (2) a total of three reported allegations must indicate that more inappropriate conduct actually took place. According to defendants, Moss's

5

defamation claim should be dismissed because: (1) a conditional privilege applies to all of the allegedly defamatory statements made by Grabill; (2) Grabill's statements about Moss to Donovan did not harm Moss's reputation with Donovan; and (3) Grabill's statements about Moss were, if not completely true, substantially true, and thus not actionable. Because each of defendants' three arguments rely upon facts outside the complaint, the court does not consider them as they have been framed in defendants' motion to dismiss, but instead, undertakes an independent analysis of whether Moss has stated an actionable defamation claim. In the court's view, neither of the two allegedly defamatory statements is actionable because: (1) the first statement is: (a) not defamatory, and (b) substantially true; and (2) the second statement is a statement of opinion.

In New Hampshire, "[t]o establish defamation, there must be evidence that a defendant failed to exercise reasonable care in publishing, without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party."

6

Independent Mech. Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 138 N.H. 110, 118 (1993) (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977); R. MCNAMARA, 8 NEW HAMPSHIRE PRACTICE, PERSONAL INJURY, TORT AND INSURANCE PRACTICE § 2 (1988)). A statement is defamatory if it "tends to lower the plaintiff in the esteem of any substantial and respectable group of people," Nash v. Keene Publ'g Corp. 127 N.H. 214, 219 (1985) (citing Duchesnaye v. Munro Enters., Inc., 125 N.H. 244, 252 (1984)), and this determination is a question of law for the court, Duchesnaye, 125 N.H. at 252-53 (citing Thomson v. Cash, 119 N.H. 371, 373 (1979); RESTATEMENT (SECOND) OF TORTS § 614 (1977); W. PROSSER, TORTS § 111, at 747-48 (4th ed. 1971)). However, neither a statement of fact that is substantially true, see Simpkins v. Snow, 139 N.H. 735, 740 (1995) (citation omitted), nor a statement of opinion, see Nash, 127 N.H. at 219 (citations omitted), is actionable as defamation.

The first allegedly defamatory statement that Moss identifies, Grabill's claim that he had received a complaint about Moss "through 'the State of New Hampshire'" (Compl. ¶ 20),

7

is not actionable because: (1) it is not defamatory; and (2) it is substantially true. "It is axiomatic that '[w]ords alleged to be defamatory must be read in the context of the publication taken as a whole.'" Duchesnaye, 125 N.H. at 249 (quoting Morrissette v. Cowette, 122 N.H. 731, 733 (1982)). Here, Grabill is alleged to have made a statement that he had received two complaints from parents of campers and one "through the State of New Hampshire." Significantly, Moss does not challenge Grabill's statement that he had received two complaints from parents. He only challenges the statement that a complaint had come "through the State."

Grabill's statement about a complaint that had come through the State of New Hampshire could not reasonably be read to defame Moss, by lowering him in the esteem of others, see Nash, 127 N.H. at 219, for at least two reasons. First, the statement is not a statement about Moss; it is a statement about the source of a complaint. In other words, Moss does not accuse Grabill of telling Donovan: (1) that Moss had had inappropriate contact with

8

campers; or (2) that the State had either investigated Moss or accused him of having inappropriate contact with campers. Rather, Moss accuses Grabill of telling Donovan that the State had told him (Grabill) that somebody had told the State that Moss had had inappropriate contact with campers. But a person's decision to go to the State, rather than the camp, with a complaint that was substantially similar to complaints that others brought directly to the camp neither says nor implies anything about Moss. Because Moss does not allege that Grabill told Donovan about any action or conclusion or statement of fact by the State, other than the purely ministerial function of transmitting a complaint ostensibly similar to those made by parents directly to the camp, Grabill's reference to "the State," as alleged in Moss's complaint, is immaterial, and could not reasonably be read as lowering Moss's esteem in the eyes of others (according to Moss's complaint, Grabill simply said that a complaint had come "through the State," not that the complaint had been made <u>by</u> the state).

9

Grabill's statement about the State of New Hampshire is also not defamatory because in addition to being highly attenuated from the person allegedly defamed by it, the most negative inference that may reasonably be drawn from the statement is that somebody reported Moss to the State for inappropriate contact with campers. However, in the context of the unchallenged part of Grabill's statement to Donovan – that two similar complaints about the same sort of conduct had been made directly to the camp – the implication that a third complaint had been made to the State may not reasonably be read as further lowering the esteem in which Moss would be held by others.

And, because Moss does not challenge the truth of Grabill's statement about the two complaints made directly to the camp, the contested statement about the State of New Hampshire is not actionable – because it is not defamatory and because it is substantially true, when viewed in the context established by the facts alleged in the complaint. "A statement is not actionable if it is substantially true." Simpkins, 139 N.H. at 740 (citing

10

<u>Chagnon v. Union-Leader Corp.</u>, 103 N.H. 426, 437 (1961)).

According to <u>Chagnon</u>, "it is not necessary for the defendant to prove the literal truth of a defamatory statement in every detail but only that it is substantially true . . . ." 103 N.H. at 437. Here, the facts in Moss's complaint are that two parents made complaints against him directly to the camp.[2] Grabill stated that a third came "through the State of New Hampshire." Because Grabill's statement mentioned no determination or accusation by the State, his reference to the State is an insignificant detail and, for the reasons given above, the statement may reasonably be understood as nothing more than a statement that a third similar complaint had been made against Moss. Moreover, given that Moss does not challenge the truth of Grabill's statement about the two direct complaints, the number of complaints against Moss – two versus three – is also an insubstantial detail. Even under the facts as alleged by Moss, multiple complaints of inappropriate

---

[2] While Moss does not allege this fact directly, he does not claim that he was defamed by Moss's statement to Donovan about the two parental complaints, and the only reasonable inference that may be drawn from Moss's failure to challenge this statement is that these two complaints were, in fact, made.

contact had been made against him.  Thus, Grabill's statement, which does little more than imply a third similar complaint, was substantially true – in the sense that complaints about inappropriate contact had indeed been made against Moss.

Because the first statement alleged by Moss to be defamatory is not defamatory, and is also substantially true, it is not actionable.

The second allegedly defamatory statement that Moss identifies, Grabill's claim that "the existence of three known allegations automatically implied the existence of other unreported ones" (Compl. ¶ 20), is not actionable because it is not a statement of fact; it is a statement of Grabill's opinion as to the existence of other incidents.

> [A] statement of opinion is not actionable, <u>Gertz v. Robert Welsh, Inc.</u>, 418 U.S. 323, 339-40 (1974); <u>Pease v. Telegraph Pub. Co., Inc.</u>, 121 N.H. 62, 65 (1981), unless it may reasonably be understood to imply the existence of defamatory fact as the basis for the opinion.  <u>Duchesnaye</u> . . . [125 N.H.] at 249; RESTATEMENT (SECOND) OF TORTS § 566 (1977).  Whether a given statement can be read as being or implying an actionable

> statement of fact is itself a question of law to be
> determined by the trial court in the first instance,
> Pease v. Telegraph Pub. Co., Inc., supra at 65,
> considering the context of the publication as a whole.
> See Morrissette v. Cowette, 122 N.H. 731, 733 (1982).
> If an average reader could reasonably understand a
> statement as actionably factual, then there is an issue
> for a jury's determination . . . . See Pease v.
> Telegraph Pub. Co., Inc., supra.

Nash, 127 N.H. at 219 (parallel citations omitted).

With respect to his statement about the likelihood of additional incidents of inappropriate contact with campers involving Moss, Grabill did not express an opinion that implied his knowledge of additional facts, but merely offered a general theory – his belief – that in any case such as this, the number of known allegations will invariably represent some larger number of actual incidents.  No person in Donovan's position could reasonably understand Grabill's statement, as alleged by Moss, to imply Grabill's actual knowledge of additional incidents, or even additional complaints.  Thus, the facts alleged by Moss make this case distinguishable from both Nash and Duchesnaye, cases in

13

which the court found the statements at issue to be, or to imply, actionable statements of fact.

In Nash, statements defendant labeled as opinions were published in a letter to the editor of The Keene Sentinel that was headed "Specific facts," 127 N.H. at 217, and which included items such as: (1) "Because of one cop's stupidity Keene just lost another cruiser . . . ." id. at 218; (2) "This is his sixth cruiser he zeroed . . . ." id.; and (3) "Assistant City Attorney David Park has numerous complaints on the matter of Nash," id. The New Hampshire Supreme Court held that the trial court erred "in finding that no average reader could have understood the [defendant's] letter to be stating or implying fact rather than opinion," id. at 219. Unlike defendant in Nash, Grabill is not alleged to have implied any personal knowledge of additional incidents or complaints involving Moss.

In Duchesnaye, plaintiff had been convicted of making annoying – but wordless – telephone calls, 125 N.H. at 248. The

14

statements defendant labeled as opinions appeared in an editorial in The Berlin Reporter on "the subject of 'obscene and harassing phone calls.'" Id. The author of the editorial

> wrote that such calls were often from children, but he
> went on to observe that "others who make these calls
> are unstable persons who need help. In fact, some are
> in their thirties, forties and even fifties. A few
> days ago a 56-year-old Berlin man was arrested and
> convicted in District Court of making these calls."

Id. Affirming a verdict for plaintiff in a bench trial, the Supreme Court explained that "a series of factual statements in the editorial could have been read as indicating that the plaintiff had made obscene calls." Id. at 250. Unlike plaintiff in Duchesnaye, Moss does not allege in this case that Grabill made a series of factual statements from which Donovan could reasonably have drawn an erroneous conclusion; the only basis on which Donovan could have concluded that there were other incidents or complaints was by accepting Grabill's general thesis that in matters such as this, reported incidents are always outnumbered by actual incidents. But that thesis does not constitute a factual statement about Moss; it merely expresses Grabill's general belief about how the world works.

15

Because Moss's complaint fails to allege any statement by Grabill that is actionable as defamation, the defendants' motion to dismiss is granted as to Count I.

II.  Intentional Infliction of Emotional Distress

In Count II, Moss claims that Grabill intentionally inflicted emotional distress upon him by falsely reporting, to him, that the camp had received a complaint against him through the State of New Hampshire.  Grabill argues that Count II should be dismissed because: (1) Moss has offered no factual basis for his assertion that Grabill's alleged statements constituted conduct sufficiently outrageous to support a claim for intentional infliction of emotional distress; and (2) the claim is barred by the rule against maintaining concurrent causes of action for defamation and intentional infliction of emotional distress when the factual basis for each claim is an allegedly defamatory statement.  Moss counters that: (1) Grabill's false report of a complaint made through the State of New Hampshire was outrageous because it was entirely gratuitous, given his status

16

as an at-will employee; and (2) the factual predicate for his claim does not sound in defamation, because the act on which it is based is not Grabill's conversation with Donovan about Moss, but rather, Grabill's conversation with Moss himself.

"One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for that emotional distress." Konefal v. Hollis/Brookline Coop. Sch. Dist., 143 N.H. 256, 260 (1998) (citing Morancy v. Morancy, 134 N.H. 493, 495 (1991)). In Morancy, the New Hampshire Supreme Court recognized the tort of intentional infliction of emotional distress, 134 N.H. at 495, and in the process, adopted the approach of the RESTATEMENT (SECOND) OF TORTS § 46, id. at 495-96; see also Godfrey v. Perkin-Elmer Corp., 794 F. Supp. 1179, 1188-89 (D.N.H. 1992) (citing Jarvis v. Prudential Ins. Co. of America, 122 N.H. 648, 652 (1982)).

> Comment d [of the RESTATEMENT (SECOND) OF TORTS § 46] offers the following guidance:
>
> > Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all

17

possible bounds of decency, and to be
regarded as atrocious, and utterly
intolerable in a civilized community.
Generally, the case is one in which the
recitation of the facts to an average member
of the community would arouse his resentment
against the actor, and lead him to exclaim,
"Outrageous!"

"This standard plainly anticipates outrages far beyond
the indignities and insensitivity that too often taint
our daily lives." Clay v. Advanced Computer
Applications, Inc., 370 Pa.Super. 497, 536 A.2d 1375,
1385 (Pa. 1988), rev'd in part on other grounds, 522
Pa. 86, 559 A.2d 917 (Pa. 1989). In determining
whether conduct is extreme and outrageous, it should
not be considered in a "sterile setting detached from
the surroundings in which it occurred," and such
behavior should be found to exist "only if the average
member of the community must regard the defendant's
conduct as being a complete denial of plaintiff's
dignity as a person." Wethersby v. Kentucky Chicken
Co., 86 Md.App. 533, 587 A.2d 569, 578, cert. granted,
324 Md. 90, 595 A.2d 1077 (1991).

Godfrey, 794 F. Supp. at 1189.


In Godfrey, the trial court denied a motion to dismiss a

claim of intentional infliction of emotional distress brought by

a female secretary against two male supervisors because "[a]s

alleged, defendants' conduct represents ongoing, unadorned

[sexual] discrimination of an inherently offensive nature, of a

18

kind one should not be expected to encounter as a part of daily life," 794 F. Supp. at 1189.  The court continued, "[a]rguably, defendants seized every opportunity to upset plaintiff with sexually abusive language and conduct," id.  In Konefal, by contrast, the New Hampshire Supreme Court affirmed the superior court's dismissal of a claim for intentional infliction of emotional distress based upon a termination of employment that may have been actionable as a wrongful termination, 143 N.H. at 260, reasoning that while discharging an employee "may be illegal and reprehensible, a great deal more is required to approach outrageous conduct.  Such conduct is bad conduct, but it is not outrageous and intolerable conduct," id. (quoting Lococo v. Barger, 958 F. Supp. 290, 298 (E.D. Ky. 1997)).

Here, because Grabill's alleged defamation cannot serve as the basis for a claim of intentional infliction of emotional distress, see Provencher v. CVS Pharmacy, 145 F.3d 5, 12 (1st Cir. 1998) (quoting DeMeo v. Goodall, 640 F. Supp. 1115, 1116 (D.N.H. 1986) ("New Hampshire law does not recognize a cause of

19

action for wrongful infliction of emotional distress where the factual predicate sounds in defamation.")), Moss's emotional distress claim is necessarily based upon a single act by Grabill, his allegedly false statement to Moss that a complaint of inappropriate contact had been made against him through the State of New Hampshire. Assuming the statement to be untrue, nevertheless, in context, it has far more in common with the wrongful termination alleged in Konefal than with the ongoing pattern of sexual discrimination alleged in Godfrey. Furthermore, the allegedly false statement that Moss attributes to Grabill was made in a conversation initiated by Moss. Grabill initially informed Moss that he would not be invited back to Pemi but gave no reason. Grabill mentioned the complaints against Moss only when Moss asked for an explanation. Finally, during the conversation in which Grabill is alleged to have told Moss about a complaint made through the State of New Hampshire, Grabill also told Moss about two other complaints made by parents of campers, the existence of which Moss does not dispute. In light of the setting in which Grabill's statement to Moss is

20

alleged to have occurred, see Godfrey, 794 F. Supp. at 1189, a false report of an additional complaint made through the State of New Hampshire would hardly exceed the bounds of decency so as to be considered sufficiently "atrocious" or "outrageous" – as those terms have been used by the New Hampshire Supreme Court – to support an emotional distress claim.

In summary, Moss has failed to state a claim for intentional infliction of emotional distress on which relief can be granted, and, as a result, defendants' motion to dismiss is granted as to Count II.

III. Tortious Interference With Prospective Contractual Rights

In Count III, Moss claims that Grabill tortiously interfered with his prospective contractual relationship with Pemi by publishing false and defamatory statements about him, an act that was outside the scope of his authority as an agent of the camp. Defendants argue that Count III should be dismissed because: (1) Moss had no ongoing contractual relationship with the camp; (2)

21

he suffered no monetary loss because he drew no salary from the camp; (3) Grabill's conduct was privileged; and (4) Grabill was not a third party to any contractual relationship that may have existed between Moss and Pemi.  Moss responds that he has stated a viable claim because: (1) monetary damages are not necessary to sustain a cause of action for interference with a contractual relationship; and (2) Grabill's actions were not privileged because he was acting outside the scope of his authority.

Moss has framed Count III as a claim for "tortious interference with prospective contractual rights" (Compl. at 6), which appears to conflate two separate torts: (1) "intentional interference with a prospective contractual relationship," <u>Baker v. Dennis Brown Realty</u>, 121 N.H. 640, 644 (1981) (emphasis in the original omitted) (citing <u>Daley v. Blood</u>, 121 N.H. 256, 257 (1981)); and (2) "tortious interference with contractual relations," <u>National Employment Serv. Corp. v. Olsten Staffing Serv. Inc.</u>, 145 N.H. 158, ___, 761 A.2d. 401, 405 (2000).  The first of these torts is fairly described as follows: "One who,

22

without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another is liable to the other for the harm caused thereby," Baker, 121 N.H. at 644 (quoting Bricker v. Crane, 118 N.H. 249, 252 (1978); citing RESTATEMENT (SECOND) OF TORTS § 766B (1979)).  Interestingly, while Moss framed Count III (in his complaint) as a claim for tortious interference with prospective contractual rights, he seems to derive the elements of his cause of action (in his objection to defendant's motion to dismiss) from Roberts v. General Motors Corp., 138 N.H. 532 (1994), which is a case about tortious interference with contractual relations.  "In order [for Moss] to prove tortious interference with contractual relations, [he] must prove that [he] had a contractual relationship with [Pemi], that [Grabill] knew of that relationship, and that [Grabill] wrongfully induced [Pemi] to breach that contract."  National Employment Serv. Corp., 145 N.H. at ___, 761 A.2d at 405 (2000) (citing Montrone v. Maxfield, 122 N.H. 724, 726 (1982)).  Moss must prove, as well, "that the damages claimed were proximately caused by

23

[Grabill's] interference," Roberts, 138 N.H. at 539 (citing Montrone, 122 N.H. at 726). Moss has failed to state an actionable claim under either theory.

Moss has failed to state a claim for intentional interference with prospective contractual relations because he has alleged no wrongful act on the part of Grabill that constituted interference with his prospective contractual relationship with the camp. While Moss argues that Grabill's publication of a false and defamatory statement about him cost him his prospective contract with Pemi for the summer of 2001, the only publication alleged in the complaint is Grabill's publication to Donovan, who is not alleged to have had any control over Moss's employment with Pemi. Thus, even if the facts he alleges are true, Moss cannot prove that Grabill's publication of a false and defamatory statement caused him to lose his position with the camp. Not only does Moss fail to allege publication to anyone other than Donovan, but, on the facts alleged, any publication of a false and defamatory

24

statement took place after Moss's relationship with Pemi was terminated by Grabill's letter of October 2000. Finally, while Moss alleges that Grabill was acting outside the scope of his authority when he committed the defamation at issue here, the question of Grabill's authority is not material because, under the facts alleged, there was no defamation until after Moss was terminated. To restate, Moss has failed to state a claim for intentional interference with prospective contractual relations because he has alleged no wrongful act by Grabill that caused Pemi to decline to invite him to work at the camp during the summer of 2001.

Moss has also failed to state a claim for tortious interference with contractual relations because he has alleged no facts supporting a claim that Pemi breached its contract with him, a necessary element of that tort, see National Employment Serv. Corp., 145 A.2d at ___, 761 A.2d at 405. As a preliminary matter, as between the two torts Moss seems to have combined in Count III, tortious interference with contractual relations would

25

be appear to be the more appropriate.[3]  The facts alleged tend to support the existence of an at-will employment agreement between Moss and Pemi – Moss refers to himself as "an at-will employee at Camp Pemigewassett" (Obj. to Mot. to Dismiss at 9).  Because Moss was an at-will employee, Pemi was free to discharge him with or without cause, Cloutier v. Great Atl. & Pac. Tea Co., 121 N.H. 915, 920 (1981) (quoting Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72, 417 A.2d 505, 512 (1980)), subject only to the prohibition against wrongful termination.  See id.  Because Moss has alleged no facts supporting a claim that he was wrongfully terminated by the camp, he has not alleged that Pemi breached its

---

[3] Compare, for example, Baker, 121 N.H. 640, a case of intentional interference with prospective contractual relations, with Birkmaier v. Rockingham Ventures, Inc., No. 94-429-SD, 1995 WL 653119 (D.N.H. Sept. 7, 1995), a case of tortious interference with contractual relations.  In Baker, a real estate agent representing one potential buyer intentionally interfered with a potential contractual relationship between the seller and another potential buyer, represented by another real estate agent, in order to collect a full sales commission rather than having to split a commission with the agent representing the other buyer.  In contrast, in Birkmaier, plaintiff was a seasonal worker at Rockingham Park who was not invited back for the 1994 racing season, due to the malicious interference of his direct supervisor with upper level management.

at-will employment contract with him.  And, absent a breach of contract, Moss has no claim for tortious interference with contractual relations.  See National Employment Serv. Corp., 145 N.H. at ___, 761 A.2d at 405.

Because Moss has failed to state a claim for either intentional interference with prospective contractual relations or tortious interference with contractual relations, defendants' motion to dismiss is granted as to Count III.

IV.  Civil Conspiracy

In Count IV, Moss claims that the members of the Pemi board conspired with Grabill by ratifying, after the fact, Grabill's decision to terminate him.  Defendants argue this claim should be dismissed because: (1) the board acted lawfully and within its rights when it decided not to invite Moss to work at the camp in 2001; and (2) did not carry out its decision not to invite Moss back to Pemi by any unlawful means.  Moss contends that even if it was lawful for the Pemi board to terminate its relationship

27

with him, "the means employed by Defendant Grabill and adopted by the remaining Defendants was tortious" (Obj. to Mot. to Dismiss at 11). The court does not agree.

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987) (quoting 15A C.J.S. Conspiracy § 1(1), at 596 (1967)). The elements of a cause of action for civil conspiracy are:

> (1) two or more persons (including corporations); (2) an object to be accomplished (i.e., an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. Bonds v. Landers, 279 Or. 169, 174, 566 P.2d 513, 516 (1977); Dickey v. Johnson, 532 S.W.2d 487, 502 (Mo.Ct.App. 1975).

Jay Edwards, Inc., 130 N.H. at 47 (emphasis in the original).

Given the elements of civil conspiracy and the facts alleged in Moss's complaint, Moss appears to be claiming that by failing

28

to overrule Grabill's decision to fire him, the Pemi board ratified a decision that was: (1) based upon a false statement; (2) implemented in a manner intended to inflict emotional distress; and (3) constituted a tortious interference with contractual relations. Therefore, Moss argues, the board agreed to perpetuate Grabill's tortious conduct and thus took part in a conspiracy to defame him, to intentionally inflict emotional distress upon him, and to tortiously interfere with his contractual relations with the camp. Because the court has already dismissed Moss's claims for emotional distress and interference with contractual relations, those claims cannot serve as the basis for a conspiracy claim. See Cunningham v. PFL Life Ins. Co., 42 F. Supp. 2d 872, 884 (N.D. Iowa 1999) ("conspiracy claim is valid only to the extent that another claim is valid and an agreement was made to commit the wrong which forms the basis of the other claim") (emphasis in the original) (citation omitted); Brock v. Baxter Healthcare Corp., 96 F. Supp. 2d 1352, 1359 (S.D. Ala. 2000) ("Without a viable cause of action based on fraud, plaintiff cannot maintain a cause of action

29

alleging conspiracy to commit fraud.") (citations omitted).
Accordingly, the only part of Count IV that requires analysis is
Moss's claim that the Pemi board conspired with Grabill to
accomplish Grabill's alleged defamation.

Moss does not have a valid claim against the members of the
Pemi board for conspiracy to commit defamation because he does
not allege that any member of the board ever knew of the alleged
defamation at any point before Grabill published the allegedly
false and defamatory statement to Donovan. A civil conspiracy
requires "an object <u>to be accomplished</u>." <u>Jay Edwards, Inc.</u>, 130
N.H. at 47 (emphasis added). But, according to Moss's own
statement of facts: (1) Grabill defamed Moss to Donovan; (2) one
member of the Pemi board not only verified that no complaint
against Moss had come to the camp through the State, but also
knew that Moss believed Grabill had misrepresented that a
complaint had been made through the State; and (3) the board
ratified Moss's termination. In other words, at whatever point
the Pemi board learned of Grabill's alleged defamation, the

30

defamation was not an object "to be" accomplished; it was an

object that had already been accomplished.  Furthermore, Moss

does not allege that the board in any way ratified the

defamation, but rather, that it ratified Grabill's decision to

terminate him, and beyond that, according to Moss's own

complaint, the board affirmed Moss's termination even though it

well knew that no complaint had been made against Moss "through

the State."  As a factual matter, the Pemi board could not have

"adopted" Grabill's defamation if, as Moss alleges, the board

knew that there had been no complaint made through the State of

New Hampshire before it ratified Grabill's decision to terminate

him.  Because the members of the board were aware that no

complaint had been made through the State, their ratification of

Grabill's decision to terminate Moss had to have been based upon

factors other than Grabill's alleged defamation, which vitiates

Moss's claim that the board's decision to uphold his termination

was based upon – or perpetuated – Grabill's allegedly tortious

acts.  Finally, while it is theoretically possible that the law

of agency could impute liability for Grabill's tortious conduct

31

to the board, <u>ex post facto</u>, Moss has cited no authority, and the court is aware of none, for the proposition that a conspiracy can be entered into after the commission of the unlawful act that is the putative object of the conspiracy.[4]  Therefore, Moss has failed to allege a set of facts that could give rise to a claim of a civil conspiracy to defame him.

Because Moss has failed to state a civil conspiracy claim on which relief can be granted, defendants' motion to dismiss is granted as to Count IV.

---

[4] Having invoked the law of agency, the court notes in passing the following inconsistency in Moss's position.  In Count II, Moss appears to rely upon a claim that Grabill was acting outside the scope of his authority, in order to establish that he was a third party <u>vis á vis</u> the Pemi board, for the purpose of establishing the elements of a claim for interference with contractual relations.  However, in his civil conspiracy claim, Moss relies upon the concept of ratification, which would have the legal effect of bringing Grabill's allegedly tortious acts within the scope of the authority granted by the board.  Because these two counts founder on other grounds, the court need not resolve this conundrum.

## Conclusion

For the reasons given, defendants' motion to dismiss (document no. 4) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.


**SO ORDERED.**


                                        _____

Steven J. McAuliffe
United States District Judge

October 9, 2001

cc:   Robert R. Lucic, Esq.
      Marie M. McPartlin, Esq.
      Russell F. Hilliard, Esq.