Alternative Systems v. Synopsys       CV-00-546-B    10/24/02

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE


**Alternative Systems**
**Concepts, Inc.**

    **v.**                                      Civil No. 00-546-B
                                         Opinion No. 2002 DNH 190
**Synopsys, Inc.**


### MEMORANDUM AND ORDER


Alternative Systems Concepts, Inc. ("ASC") entered into an agreement with Languages for Design Automation ("LEDA") to temporarily become LEDA's exclusive marketing agent for one of its product lines.  The temporary agreement specified that the parties would attempt to negotiate a permanent agreement.  LEDA was acquired by Synopsys, Inc., one of ASC's competitors, however, before LEDA and ASC reached a permanent agreement and Synopsys thereafter declined to negotiate with ASC.

ASC sued Synopsys in its capacity as LEDA's successor for breach of contract.[1]  It also sued Synopsis for intentional

---

[1] I dismissed ASC's additional claims for breach of the implied duty of good faith and fair dealing and misrepresentation in a prior order.  See Memorandum and Order, C.A. No. 00-546-B,

interference with contractual and prospective business relations based upon its own conduct. Synopsys moves for summary judgment with respect to ASC's intentional interference claim.

## I. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. See id. at 248.

In ruling upon a motion for summary judgment, I must construe the evidence in the light most favorable to the non-movant. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001). The party moving for summary judgment, however, "bears

August 2, 2001.

-2-

the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249). Neither conclusory allegations, improbable inferences, or unsupported speculation are sufficient to defeat summary judgment. See Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).

## II.  BACKGROUND

In March 1999, ASC entered into a letter of understanding ("LOU") with LEDA. Pursuant to the LOU, ASC became LEDA's exclusive marketing agent in the United States for its "Proton"

product line from April 1, 1999 until September 30, 1999.  The

LOU also states that:

> [a]fter the expiration of this LOU, both companies
> might enter into a formal long-term agreement to
> appoint ASC as an agent to market and sell PROTON
> Products in the [United States].

LOU at ¶2.  It further provides that "LEDA and ASC will negotiate

in good faith a permanent agreement based on experiences during

the term of this LOU," but it recognizes that "neither LEDA nor

ASC has any obligation in entering such a permanent agreement."

LOU at ¶19.

Before the LOU expired, Synopsys approached LEDA in an

effort to form a business relationship between the two companies.

Synopsys ultimately offered to purchase LEDA and, in late

September 1999, both companies met to discuss Synopsys' offer.

At the meeting, LEDA initially disclosed relevant business

information, including its LOU with ASC.  Synopsys' notes

summarizing the initial meeting indicate that "LEDA [was]

prudent to not engage in any long term commitments with its

distributors."  Plf's. Surreply to Def. Mot. for Part. Summ. J.,

Ex. 3 (Bates Stamped FG-0024).

In October 1999, ASC requested that LEDA enter into a long-term agreement.  Although LEDA was unwilling to enter into a written contract at that time, it orally agreed to continue to operate under the terms of the LOU until negotiations on a written agreement could be completed.  It also agreed to expand the area covered by ASC's exclusive right to market LEDA's Proton product line to include Canada and to continue negotiating the terms of a long-term agreement modeled upon the LOU.  By December 1999, all such negotiations had been completed.  For reasons that are not clearly explained; however, the parties never entered a written long-term agreement.

Synopsys acquired LEDA in January 2000.  Thereafter, it notified ASC that it would no longer honor the LOU.

## III.  <u>DISCUSSION</u>

ASC claims that Synopsys "intentionally and improperly interfered with contractual and prospective relationships between ASC and LEDA by causing LEDA to delay negotiating in good faith, a permanent contract with ASC and to renege on its Canadian distributorship."  Amend. Compl. ¶ 31.  It also claims Synopsys improperly "pushed for LEDA to agree to be acquired and at the

same time entered into an agreement with LEDA which interfered with its autonomy." Plf's. Surreply to Def. Mot. for Part. Summ. J., at 6.

ASC appears to merge two distinct tortious interference theories: intentional interference with *contractual* relations; and intentional interference with *prospective* contractual relations. See Nat'l Employment Serv. Corp. v. Olsten Staffing Serv., 145 N.H. 158, 162 (2000); Baker v. Dennis Brown Realty, 121 N.H. 640, 644 (1981). Although ASC includes both legal theories in a single claim, I analyze each theory separately.

## A.    Tortious Interference with Contractual Relations

To prove a tortious interference with contractual relations claim under New Hampshire law, ASC must prove that: (1) it had a contractual relationship with LEDA; (2) Synopsys knew of the contractual relationship; (3) Synopsys wrongfully induced LEDA to breach the contract; and (4) ASC's damages were proximately caused by Synopsys' interference. Roberts v. General Motors Corp., 138 N.H. 532, 539 (1994); Nat'l Employment Serv. Corp., 145 N.H. at 162. "'Only improper interference is deemed tortious in New Hampshire.'" Id. (quoting Roberts, 138 N.H. at 540).

ASC's interference with contractual relations claim asserts that Synopsys caused LEDA to "delay negotiating in good faith, a permanent contract with ASC." Amend. Compl. ¶31. This claim fails for at least two reasons. First, the evidence does not support ASC's assertion that Synopsys wrongfully induced LEDA to breach the terms of the LOU. Synopsys' internal document summarizing its September meeting with LEDA notes that it was LEDA, acting on its own, that chose not to enter into long term commitments with any of its distributors. The remaining evidence establishes only that Synopsys offered to purchase LEDA, performed due diligence, and ultimately agreed to acquire the company. This evidence, in and of itself, is not sufficient to permit a reasonable fact finder to conclude that Synopsys wrongfully induced LEDA to breach the terms of the LOU. See Restatement (Second) of Torts § 767 (1979 & Supp. 2002) (outlining factors to be weighed in determining whether interference is improper; presenting examples of improper interference).

ASC's claim also fails because ASC cannot establish that LEDA breached the LOU. The undisputed evidence establishes that LEDA, in accord with the terms of the LOU, negotiated with ASC in

good faith. "The only thing left to be done" after these negotiations were completed was for the parties to enter into a formal written contract. Mem. Supp. Def. Reply to Obj. for Part. Summ. J., Ex. B (Doc. No. 51). LEDA, however, never obligated itself to sign a long-term agreement with ASC. Thus, once it concluded that it wished to ally itself with Synopsys rather than ASC, it was free to reject ASC's offer to enter a long-term agreement. Because LEDA never breached its LOU with ASC, Synopsys cannot be liable on ASC's interference with contractual relations claim, even if it improperly attempted to interfere with the relationship between LEDA and ASC.

**B.** **Tortious Interference with Prospective Contractual Relations**

ASC also claims that Synopsis interfered with ASC's prospective contractual relations by wrongfully inducing LEDA not to enter into a long-term agreement. The elements of this tort are described as follows: "One who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another is liable to the other for the harm caused thereby." <u>Baker</u>, 121 N.H. at 644 (quotation omitted).

ASC asserts that Synopsys interfered with its prospective contractual relations with LEDA because it "pushed for LEDA to agree to be acquired and at the same time entered into an agreement with LEDA which interfered with its autonomy." Plf's. Surreply to Def. Mot. for Part. Summ. J., at 6. ASC's allegations rest upon the conclusion that Synopsys somehow "interfered with" LEDA's "autonomy." Such conclusory statements are not enough to withstand summary judgment. See Carroll, 294 F.3d at 236-37 (summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation).[2]

Because Synopsys' actions were privileged, ASC's claim fails even if Synopsys interfered with ASC's prospective relations with LEDA. See Baker, 121 N.H. at 644 (once it is established that defendant induced third party not to enter prospective contract, the court must determine whether defendant's actions were privileged). Section 768 of the Restatement (Second) of Torts states that:

_____

[2] I note that ASC's evidentiary proffer supporting its conclusory statement does nothing to demonstrate that Synopsys tortiously interfered with the relationship between ASC and LEDA.

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

     (a) the relation concerns a matter involved in the competition between the actor and the other and

     (b) the actor does not employ wrongful means and

     (c) his action does not create or continue an unlawful restraint of trade and

     (d) his purpose is at least in part to advance his interest in competing with the other.

Synopsys has properly invoked this so-called "competitor's privilege." See Nat'l Employment Serv. Corp., 145 N.H. at 162.

The applicability of the competitor's privilege in this case depends upon whether Synopsys employed "wrongful means" in interfering with ASC's prospective relations with LEDA. Although "wrongful means" is a somewhat nebulous concept, the Restatement provides some guidance. Business competition that promotes better products, a stronger economy, and more efficient services is justified. See Restatement (Second) Torts § 768 cmt. e. On the other hand, conduct that is predatory and imposes undue restraint upon a rival may be improper. See id. cmt. e, cmt. f; Baker, 121 N.H. at 643-45 (real estate agent purposely caused buyer to lose prospective contract by placing undue conditions and restrictions upon purchase and sale agreement).

-10-

ASC's allegations of improper conduct on the part of Synopsys are unavailing. The evidence reveals that Synopsys offered to purchase LEDA, performed due diligence, and executed the acquisition. Regardless of whether Synopsys was aware of the LOU, nothing in the record indicates that Synopsys employed wrongful means designed to injure or destroy ASC's distribution rights or improperly thwarted a prospective agreement between ASC and LEDA.

While it may be true that Synopsys sought to acquire LEDA, in order to become the sole distributor of LEDA's products, keeping one step ahead of the competition does not automatically translate into improper conduct. Generally, business acquisitions are "a necessary or desirable incident of free enterprise," Restatement (Second) of Torts § 768 cmt. e, rather than predatory conduct aimed at improperly restraining the trade of a competitor. Cf. Restatement (Second) of Torts § 768 cmt. f (actions to establish or maintain a monopoly may be improper). The facts at issue here do not present the exceptional case where such an acquisition could support an intentional interference with prospective business relations claim.

## IV.   CONCLUSION

Viewing the facts in the record in the light most favorable to ASC, I grant Synopsys' partial motion for summary judgment (Doc. No. 39).

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

October 24, 2002

cc: John P. Griffith, Esq.
    Chris Scott Graham, Esq.
    Irvin D. Gordon, Esq.