Merrimack
No. 95-865

CONCORD ORTHOPAEDICS PROFESSIONAL ASSOCIATION

v.

H. JAMES FORBES, M.D.

December 4, 1997

*Nelson, Kinder, Mosseau & Gordon, P.C.*, of Manchester (*Martha V. Gordon* on the brief and orally), for the plaintiff.

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* and *David P. Slawsky* on the brief, and *Mr. Hilliard* orally), for the defendant.

*Glenn W. Bricker, M.D.*, of Ashland, by brief, *pro se*, as *amicus curiae*.

THAYER, J. Pursuant to Supreme Court Rule 8, we accepted the Superior Court's (*Smukler*, J.) transfer of the following two questions: First, whether the trial court correctly concluded as a matter of law and public policy that the analysis of a covenant not to compete between a physician and a professional association is no different than that generally applied to such covenants? We hold that it did. Second, whether the trial court erred when it granted Concord Orthopaedics Professional Association's (COPA's) request to enforce the covenant not to compete to the extent it applies to COPA's existing patients, but denied COPA's request to the extent the covenant applies to new patients. We hold that it did not.

The defendant, H. James Forbes, M.D., and the plaintiff, COPA, executed an employment agreement containing a covenant not to compete. In consideration for COPA's obligation to pay Forbes deferred compensation, Forbes agreed not to practice orthopaedic medicine within a twenty-five mile radius of any COPA office for two years following his termination. The pertinent section of the covenant reads:

> [I]t is specifically agreed that when the Doctor's employment by the Association is terminated for whatever reason, the Doctor shall not practice orthopaedic medicine within a twenty-five (25) mile radius of any office out of which the Association is conducting a practice at the date of termination . . . for a period of twenty-four (24) months.

In 1995, COPA's board of directors voted to change the deferred compensation formula applicable to all physician-shareholders. Consequently, Forbes resigned, embarked on the establishment of a medical office in Concord, and sought declaration from the superior court that the covenant not to compete was unenforceable. COPA commenced a separate action seeking injunctive enforcement of the covenant. The superior court temporarily restrained Forbes from practicing orthopaedic medicine within twenty-five miles of COPA's offices in Concord, Peterborough, and New London. The superior court later partially enforced the covenant by issuing a preliminary injunction. That order restrained Forbes from treating existing COPA patients within a twenty-five mile radius of Concord for two

years with an exception for emergency surgery. The superior court declined to enforce the covenant as to new patients, reasoning that COPA lacked a legitimate interest in preventing Forbes from competing for new patients.

■ Before proceeding, we note that the covenant's term expired on July 31, 1997. Thus, the matter is technically moot. We recognize, however, valid exceptions to the mootness doctrine where the case concerns important matters of public policy and is "capable of repetition, yet evading review." *Royer v. State Dep't of Empl. Security*, 118 N.H. 673, 675, 394 A.2d 828, 829 (1978) (quotation and citation omitted); *see also Weinstein v. Bradford*, 423 U.S. 147, 148 (1975). Covenants not to compete run for various durations. Given that restraints on competition must be narrowly tailored as to duration, *see Technical Aid Corp. v. Allen*, 134 N.H. 1, 8, 591 A.2d 262, 266 (1991), it is likely that the issues raised here will recur but continue to evade review. Further, the particular questions here warrant attention because the issue of access to physicians greatly affects the public at large.

■ With respect to the first transferred question, Forbes urges us to declare covenants not to compete involving physicians to be against public policy and *per se* unenforceable. We decline Forbes' invitation.

Forbes argues that such covenants impermissibly burden the physician-patient relationship. The weight of authority, however, supports enforcement of reasonable covenants not to compete involving physicians. *See, e.g., Jewett Orthopaedic Clinic, P.A. v. White*, 629 So. 2d 922, 925 (Fla. Dist. Ct. App. 1993); *Pittman v. Harbin Clinic*, 437 S.E.2d 619, 621 (Ga. Ct. App. 1993); *Gillespie v. Carbondale & Marion Eye Ctrs.*, 622 N.E.2d 1267, 1270 (Ill. App. Ct. 1993); *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 281 (Ind. 1983); *Ohio Urology, Inc. v. Poll*, 594 N.E.2d 1027, 1031 (Ohio Ct. App. 1991); *see also* 54A AM. JUR. 2D *Monopolies, Restraints of Trade, and Unfair Trade Practices* § 939 (1996).

The public policy of New Hampshire encourages free trade and discourages covenants not to compete. *See Laconia Clinic, Inc. v. Cullen*, 119 N.H. 804, 807, 408 A.2d 412, 414 (1979). Nevertheless, our courts uphold a limited restraint if reasonable as applied to the particular circumstances of the parties. *Dunfey Realty Co. v. Enwright*, 101 N.H. 195, 198, 138 A.2d 80, 82 (1957). "A restraint on employment is reasonable only if it is no greater than necessary for the protection of the employer's legitimate interest, does not impose undue hardship on the employee, and is not injurious to the public

interest." *Moore v. Dover Veterinary Hosp., Inc.*, 116 N.H. 680, 684, 367 A.2d 1044, 1047 (1976) (per curiam). If the covenant fails one prong, the covenant is unenforceable. *Technical Aid Corp.*, 134 N.H. at 8, 591 A.2d at 266. Our traditional test of reasonableness, outlined in *Moore*, to determine whether a covenant is enforceable applies to covenants between physicians and their employers. The *Moore* test sufficiently protects the public interest; therefore, there is no reason to declare such covenants void *per se* or enunciate a new test applicable to physicians.

The second transferred question is whether the trial court abused its discretion by only partially enforcing the covenant when it issued its preliminary injunction. We first consider the validity of the covenant not to compete by determining its reasonableness under the *Moore* test.

A covenant's reasonableness is a matter of law for this court to decide. *Id.* at 8, 591 A.2d at 265. We review the trial court's factual findings for clear error. *See Ferrofluidics v. Advanced Vacuum Components*, 968 F.2d 1463, 1469 (1st Cir. 1992).

Covenants are valid only to the extent that they prevent employees from appropriating assets that are legitimately the employer's. *See* 6A A. CORBIN, CORBIN ON CONTRACTS § 1391B, at 34 (Supp. 1997). COPA has a legitimate interest in preventing Forbes from appropriating the goodwill of its business, developed in part by Forbes' contact with patients in his capacity as a COPA physician. *See Technical Aid Corp.*, 134 N.H. at 9, 591 A.2d at 266 (stating that covenants must focus on protectable interests and must be narrowly tailored to those interests); 6A CORBIN, *supra* § 1394, at 99-100 (1962). We agree with the superior court that as applied to new patients the provision was overbroad. *See Technical Aid Corp.*, 134 N.H. at 9, 591 A.2d at 266. While COPA possesses a legitimate business interest in prohibiting Forbes from competing for existing patients, no such legitimate interest exists as to new patients. The legitimate interests of the employer generally extend only to those areas in which the employee had *actual* client contact. *Cf.* Blake, *Employee Agreements Not to Compete*, 73 HARV. L. REV. 625, 677 (1960). By definition, Forbes could not have had actual contact with new patients. Thus, COPA lacks any legitimate interest in trying to prevent Forbes from competing for new patients.

COPA would have us consider new patients a subset of referring physicians. COPA apparently argues that because Forbes had actual contact with referring physicians, and those physicians generate new patients, COPA has a legitimate interest in all new patients. We

find unpersuasive language from other jurisdictions that groups referring physicians with "actual clients." *See, e.g., Fields Foundation, Ltd. v. Christensen,* 309 N.W.2d 125, 130 (Wis. Ct. App. 1981). This reasoning contravenes the principle of narrowly tailoring covenants not to compete to encompass only legitimate interests of the employer. *See Technical Aid Corp.,* 134 N.H. at 9, 591 A.2d at 266. New patients encompass far more than referring physicians. Such an expansive interpretation of legitimate interests does not foster the public good. Thus, we do not adopt this line of reasoning.

A restraint on competition must be narrowly tailored in both geography and duration to protect COPA's legitimate interest in its goodwill. *See id.* at 10-11, 14, 591 A.2d at 266-67, 269. Here, the covenant prohibited Forbes from practicing medicine within twenty-five miles of COPA's offices in Concord, Peterborough, and New London. The geographic limits imposed on an employee by a covenant not to compete "generally must be limited to that area in which the employee had client contact, as that is usually the extent of the area in which the employer's goodwill is subject to appropriation by the employee." *Id.* at 10, 591 A.2d at 266. During oral argument, COPA waived enforcement of the covenant's geographical limitations concerning COPA's two satellite offices (Peterborough and New London). Accordingly, we do not address the validity of the geographic limits concerning the satellite offices. We do hold, however, that the limitation of a twenty-five mile radius of the Concord office is reasonable because it includes COPA's normal market where Forbes had patient contact.

The covenant's duration of two years is also reasonable. A covenant not to compete should last no longer than necessary for the employees' replacements "to have a reasonable opportunity to demonstrate their effectiveness to customers." Berg, *Judicial Enforcement of Covenants Not To Compete Between Physicians: Protecting Doctors' Interests at Patients' Expense,* 45 RUTGERS L. REV. 1, 24-25 (1992). A court, when evaluating duration, must consider the time necessary to "obliterate in the minds of the public" the association between the identity of the physician with his employer's practice. *Weber v. Tillman,* 913 P.2d 84, 92 (Kan. 1996); *see also Moore,* 116 N.H. at 685, 367 A.2d at 1048 (stating, "business entity was closely identified with the veterinarians who staffed it, and this identification would not soon be extinguished upon a veterinarian's termination"). Two years is a reasonable time to allow a replacement to demonstrate his or her effectiveness and for the public to disassociate Forbes from COPA. *See Weber,* 913 P.2d at 92. Thus, we hold that the covenant as enforced protects COPA's

legitimate business interests and that its scope and duration satisfy the rule of reason.

The covenant as enforced also satisfies the second prong of the *Moore* test because it does not impose an undue hardship on Forbes. *See Technical Aid Corp.*, 134 N.H. at 8, 591 A.2d at 266. As a shareholder, director, and employee, Forbes enjoyed the protections the covenant afforded him in the event other physicians terminated their employment with COPA. Despite this fact, Forbes argues that as applied to him the covenant works an undue hardship, mostly for financial reasons. We are unpersuaded. The covenant does not preclude Forbes from practicing medicine and generating revenue; it merely protects COPA's legitimate interest in protecting its goodwill. Further, as the covenant will not apply to new patients, Forbes' potential financial burden, if any, is diminished.

The covenant as enforced satisfies the third prong of the *Moore* test because it is not injurious to the public interest. *See id.* The record reflects that the trial court considered the public interest. The trial court, in its discretion, partially enforced the covenant. The trial court exempted from the covenant's purview emergency surgeries threatening the health or welfare of COPA patients. Modification or partial enforcement, upon a showing of good faith in the employment contract's execution, may be appropriate if in the public interest. *See Smith, Batchelder & Rugg v. Foster*, 119 N.H. 679, 682, 406 A.2d 1310, 1313 (1979). Forbes does not contest the trial court's finding that the employment contract was executed in good faith. *Cf. Ohio Urology, Inc. v. Poll*, 594 N.E.2d 1027, 1032 (Ohio Ct. App. 1991) (stating that a court's power to modify a covenant is a corollary of the rule that courts strictly scrutinize these covenants). The trial court also exempted new patients from the covenant's purview. Thus, the trial court minimized the impact on the public by limiting the restriction to existing COPA patients. *See Technical Aid Corp.*, 134 N.H. 1, 591 A.2d 262.

Other factors support the conclusion that the public will not suffer undue harm. Forbes may treat any person outside the twenty-five mile restriction. Forbes may treat any new patient within the twenty-five mile radius. Partially restricted access to one orthopaedic surgeon in the Concord area does not unduly burden the public.

■ Finally, we address Forbes' argument that COPA had an adequate remedy at law and, therefore, the trial court erroneously issued an injunction. *See Unifirst Corp. v. City of Nashua*, 130 N.H. 11, 14, 533 A.2d 372, 374 (1987) (stating that an injunction is appropriate if "there is no adequate remedy at law"). "We will

uphold the decision of the trial court with regard to the issuance of an injunction absent an error of law, abuse of discretion, or clearly erroneous findings of fact." *Id.* Forbes asserts that the trial court's offer to COPA to elect either a legal or partial equitable remedy implies that an adequate remedy at law existed. We disagree. In the temporary restraining order, the trial court found that COPA did not have an adequate remedy at law. The trial court, apparently concerned that COPA would not want a preliminary injunction partially enforcing the covenant, offered COPA an election between a legal or an equitable remedy. The court's offer, however, does not compel a conclusion that COPA had an adequate remedy at law. True, the trial court's findings of fact for the preliminary injunction did not expressly find that COPA's remedy at law was inadequate. However, the trial court's related findings regarding the temporary restraining order do support a conclusion that COPA's remedy at law was inadequate. Furthermore, the record, on the whole, supports such a conclusion. We cannot conclude that the trial court committed an error of law, abused its discretion, or made clearly erroneous findings of fact with respect to issuing injunctive relief.

With respect to the parties' remaining arguments, we have reviewed the record and find them to be without merit and warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed and remanded.*

All concurred.