Rockingham
No. 2004-447

# Merrimack Valley Wood Products, Inc. & a.

### v.

## Glen Near

Argued: March 23, 2005
Opinion Issued: May 9, 2005

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Thomas J. Donovan* and *Jennifer L. Parent* on the brief, and *Ms. Parent* orally), for the plaintiffs.

*Nixon Peabody LLP,* of Manchester (*Jamie N. Hage* and *Gordon J. MacDonald* on the brief, and *Mr. Hage* orally), for the defendant.

DALIANIS, J. The plaintiffs, Merrimack Valley Wood Products, Inc. and American Cabinet Corp., appeal an order of the Superior Court (*Coffey,* J.) finding a restrictive covenant in an employment agreement entered into with the defendant, Glen Near, unenforceable. We affirm.

The record supports the following facts. Plaintiff Merrimack Valley Wood Products, Inc. (Merrimack Valley) manufactures and sells what is referred to as "millwork": doors, window units, moldings, stair parts, etc. Plaintiff American Cabinet Corp. manufactures and distributes kitchen cabinets and countertops. On February 28, 1994, the defendant began working for the plaintiffs as an outside sales representative. An outside sales representative solicits new customers and services current customers, and is paid on commission.

Prior to his employment with the plaintiffs, the defendant worked at Rivco, another millwork manufacturing company, beginning in 1978. He worked as an outside salesman at Rivco from approximately 1981 until 1991, when he started his own home construction business. He worked as a home builder until he began working for the plaintiffs in 1994.

The defendant was brought to the Merrimack Valley offices for an interview by his friend, vice-president of sales for Merrimack Valley, Gregory Dow. The defendant had worked with Dow at Rivco, and had a longstanding friendship with him. The defendant had only one interview with Dow and James Derderian, vice president and general manager of Merrimack Valley. When he started working for the plaintiffs, the defendant was given a price book, a confidential document that outlines the pricing structure used by the plaintiffs.

Dow and Derderian did not explain to the defendant at his interview that he would be required to sign a "salesman agreement," which contained a covenant not to compete and a covenant not to disclose. The defendant worked for the plaintiffs for six months before he was asked to sign the salesman agreement in September 1994. At that time, the defendant was informed that his continued employment with the plaintiffs was contingent upon signing the agreement. The defendant gave the agreement a cursory review and signed it. The agreement provides:

7. The [defendant] agrees that he will not, during the term of this agreement, or at anytime thereafter, furnish to an individual, firm or corporation other than [the plaintiffs] any list or lists of customers, business methods, systems, prices, trade secrets, or

information of any kind or nature pertaining to the business of [the plaintiffs].

8. The [defendant] agrees not to be or become engaged in any competing company or industry during the term of this Agreement, except with the written consent of [the plaintiffs]. If for any reason this agreement or relations with [the plaintiffs] shall be terminated, then he shall not, through employment or agreement with any competitive concern or industry, sell to directly or indirectly, or cause to be sold, any materials to customers which [the plaintiffs] ha[ve] sold to within the twelve (12) months prior to the date of termination, for a period of one (1) year from the date of termination.

The defendant left the plaintiffs' employ in February 1999. Before leaving, he returned his price book to Dow. The defendant was hired that same month by A & B Lumber, one of the plaintiffs' direct competitors, as an outside sales representative. The defendant continued to solicit sales from the customer base he had developed while working for the plaintiffs and from his previous experience in the industry.

On May 7, 1999, the plaintiffs filed a motion for an *ex parte* temporary restraining order, claiming that the defendant "wrongfully solicited, directly or indirectly, the [plaintiffs'] customers or clients and wrongfully disclosed confidential and proprietary information to others." The Superior Court (*McHugh*, J.) granted the plaintiffs' motion. The order restricted the defendant from disclosing information regarding the plaintiffs' customers and soliciting those customers of the plaintiffs who had transacted business with the plaintiffs during the twelve months prior to the defendant's last day of work. The order did not require a bond:

C. The [plaintiffs] are not seeking to terminate the [defendant's] employment with his new employer and, therefore, are not seeking to prevent [him] from gainful employment with a competitor. Because it does not appear that the [defendant] will suffer damages by reason of any temporary restraining order or injunction issued on this matter, the [plaintiffs] are not ordered to pay bond.

The defendant moved to dissolve the *ex parte* temporary restraining order and objected to the plaintiffs' petition for a preliminary injunction. In his motion the defendant requested that the court order the plaintiffs to post a bond in the amount of $250,000. The court denied the defendant's

request to dissolve the *ex parte* temporary restraining order, and scheduled the case for a full evidentiary hearing. The court did not address the bond issue in its order, but stated: "The issue of monetary damages by either party as a result of the other party's actions will be heard at a later date." Within ten days, the defendant filed a motion for reconsideration and for a limited evidentiary hearing. The defendant did not specifically mention that he wanted the court to reconsider its May 7, 1999 decision not to require a bond, but did request that the court "[g]rant such other further relief as justice may require." The court denied the defendant's motion for reconsideration because it had determined that the covenant language was not too broad. The court again did not address its failure to require a bond, but indicated that "[t]he other issues will be addressed at the evidentiary hearing."

The Trial Court (*Coffey*, J.) held a full evidentiary hearing and found in favor of the defendant. The court found that the non-compete covenant was unreasonable because it was too broad. The court also found reformation unwarranted, because it found that the plaintiffs had not acted in good faith. The court also examined the covenant not to disclose, and found that the injunction, based upon that portion of the contract, failed because the plaintiffs did not present evidence that the defendant possessed or intended to disclose any confidential information.

The defendant then filed a motion for assessment of costs and damages against the plaintiffs for wrongful injunction. The trial court addressed the issue of whether the "absence of a bond . . . precludes the defendant from recovering damages for wrongful injunction." The court found that it had erred in not requiring a bond when the *ex parte* temporary restraining order was issued, and awarded damages to the defendant as if a bond had been posted. The plaintiffs appealed that decision to this court. We issued an order on January 14, 2002, remanding the case to the trial court because we found that the trial court made a factual error in finding that the covenant covered "all Merrimack clients" within a 200-mile radius of Dover. In light of the trial court's error in its factual findings, we held that the trial court's decision concerning the "reasonableness" of the restrictive covenant and subsequent decisions stemming from that factual finding should be reconsidered.

On remand, the trial court again found that the covenant was unreasonable. The court found that, because the non-compete covenant applied to all of the plaintiffs' customers, regardless of whether the defendant had any contact with them, it was broader than necessary to protect the plaintiffs' legitimate interest in protecting their goodwill. The

court again found reformation unwarranted, due to the lack of good faith in the execution of the salesman agreement. The court also found that the covenant not to disclose was an insufficient basis to support a permanent injunction. Finally, the court again found that it had erred by not requiring the plaintiffs to post a bond when they filed the original *ex parte* motion. It awarded damages and attorney's fees to the defendant. This appeal followed.

On appeal, the plaintiffs argue that: (1) the covenant not to compete was reasonable, and therefore was enforceable; (2) even if the covenant was unreasonable, it was executed in good faith and, therefore, the trial court should have reformed it; and (3) the court erred in awarding damages to the defendant in the absence of a bond.

First we address the plaintiffs' argument that the covenant not to compete is reasonable. A covenant's reasonableness is a matter of law for this court to decide. We review the trial court's factual findings for clear error. *Concord Orthopaedics Prof. Assoc. v. Forbes*, 142 N.H. 440, 443 (1997).

■■ We have stated that "the law does not look with favor upon contracts in restraint of trade or competition." *Technical Aid Corp. v. Allen*, 134 N.H. 1, 8 (1991) (quotation omitted). Such contracts are to be narrowly construed. Nonetheless, restrictive covenants are valid and enforceable if the restraint is reasonable, given the particular circumstances of the case. *Id.*

■ To determine the reasonableness of a restrictive covenant ancillary to an employment contract, we employ a three-pronged test: first, whether the restriction is greater than necessary to protect the legitimate interests of the employer; second, whether the restriction imposes an undue hardship upon the employee; and third, whether the restriction is injurious to the public interest. If any of these questions is answered in the affirmative, the restriction in question is unreasonable and unenforceable. *Id.*

■ Covenants are valid only to the extent that they prevent employees from appropriating assets that are legitimately the employer's. *Concord Orthopaedics*, 142 N.H. at 443. The first step in determining the reasonableness of a given restraint is to identify the legitimate interests of the employer, and to determine whether the restraint is narrowly tailored to protect those interests. *Technical Aid*, 134 N.H. at 9.

■ An employee's special influence over an employer's customers, obtained during the course of employment, is one of the legitimate interests an employer may protect against competition. *Nat'l Employment Serv. Corp. v. Olsten Staffing Serv.*, 145 N.H. 158, 160 (2000). When an employee is put in a position involving client contact, it is natural that some of the goodwill emanating from the client is directed to the employee rather than to the employer. The employer has a legitimate interest in preventing its employees from appropriating this goodwill to its detriment. *Technical Aid*, 134 N.H. at 9.

The plaintiffs' interest here derives from the defendant's contact with the plaintiffs' customers, as was the case in *Technical Aid*. In *Technical Aid*, we considered two restrictive covenants similar to the one at issue. The first was a covenant not to "engage in competition . . . located within a radius of one hundred (100) miles"; the second was a covenant not to "service any customers Technical Aid has done any business with during the preceding year." *Id.* at 6-7. We found that the general restriction against competition must be limited to the geographic area in which the employee had client contact in order to satisfy the "narrowly tailored" test, because this is "usually the extent of the area in which the employer's good will is subject to appropriation by the employee." *Id.* at 10. We held that the one-hundred-mile geographic limitation was greater than necessary to protect Technical Aid's legitimate interests. *Id.*

We also found that the restriction against servicing clients with whom Technical Aid had done business in the preceding twelve months, regardless of geographic location, was greater than necessary to protect its legitimate interests. *Id.* at 11. Technical Aid purported to be an international organization, with clients all over the world. We held that it had no legitimate interest in protecting its entire client base from its former employee, because he had no advantage over any other complete stranger, possessing no special hold on the goodwill of the majority of Technical Aid's customers. *Id.*

In *Concord Orthopaedics*, Concord Orthopaedics Professional Association (COPA) attempted to restrict its former employee from practicing medicine altogether within a certain geographic area. We upheld the trial court's determination that COPA had no legitimate interest in preventing its former employee from soliciting new patients within that area. *Concord Orthopaedics*, 142 N.H. at 443. But we found that COPA could prohibit its former employee from competing for existing patients within the area, because the legitimate interests of the employer

generally extend to those areas in which the employee had *actual* client contact. *Id.*

*Concord Orthopaedics* and *Technical Aid* both addressed covenants restricting appropriation of the goodwill developed through an employee's contact with customers. In both cases we held that the restrictions were greater than necessary to protect the employer's legitimate interest because they extended beyond the sphere of the employee's influence, either beyond the geographic area where the employee would have had actual client contact, or beyond the employee's own clients to the public at large.

■ We now apply this reasoning to the case at hand. The plaintiffs sought to keep the defendant from doing business with any of the clients who had transacted business with them in the previous year. The trial court heard testimony that Merrimack Valley has approximately 1,200 customers. There are roughly twelve salespersons working for the plaintiffs. The defendant testified that he had about sixty regular customers. It is not clear from the record how many of its 1,200 customers Merrimack Valley does business with in an average year. What is clear, though, is that the defendant has no particular claims on the goodwill of roughly 1,140 of the plaintiffs' customers; he is in no better position than a stranger when it comes to these customers. *Technical Aid*, 134 N.H. at 11. Thus, the restrictive covenant goes far beyond the defendant's sphere of customer goodwill, and was more restrictive than necessary to protect the plaintiffs' legitimate interests.

We recognize that in *Concord Orthopaedics*, we upheld a covenant restricting the former employee from seeing any of the employer's former patients. In that case, however, we found that the employer had no legitimate interest in preventing its former employee from competing for patients he had no "actual contact with." *Concord Orthopaedics*, 142 N.H. at 443. Our result today similarly finds that it is unreasonable to prohibit the defendant from soliciting customers with whom he previously had no contact.

The plaintiffs urge us to follow *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985 (1st Cir. 1983). In *Emery*, a case involving nearly identical restrictive covenant language, the First Circuit Court of Appeals applied New Hampshire law and found that the covenant was reasonable and enforceable. *Emery*, 701 F.2d at 989-90. That case was decided before *Technical Aid* and *Concord Orthopaedics*, however. We find the focus upon the employee's sphere of customer influence in

*Technical Aid* and *Concord Orthopaedics* persuasive, and decline the plaintiffs' request.

Because the restrictive covenant fails the first prong of the reasonableness test, it is unreasonable, and therefore unenforceable. *Technical Aid*, 134 N.H. at 8.

■ We turn now to the modification issue. The plaintiffs argue that if the covenant is found to be unreasonable, it should have been modified. Courts have the power to reform overly broad restrictive covenants if the employer shows that it acted in good faith in the execution of the employment contract. *Smith, Batchelder & Rugg v. Foster*, 119 N.H. 679, 682 (1979). We will sustain the trial court's findings and conclusions unless they are lacking in evidential support or tainted by error of law. *LeTarte v. West Side Dev. Group*, 151 N.H. 291, 294 (2004).

The trial court found, relying upon *Smith, Batchelder & Rugg*, that "reformation of the covenant is inappropriate ... because petitioners did not act in good faith in the execution of the salesman agreement." The plaintiffs argue that the trial court's finding of a lack of good faith was based solely upon its determination that they did not give the defendant advance notice of the obligations imposed by the employment contract. The plaintiffs argue that "[g]ood faith and advance notice are not coextensive concepts," and that to determine good faith a trial court must examine all of the relevant circumstances of a particular case.

We agree that good faith and advance notice are not one and the same. We do not agree, however, that the trial court relied solely upon the absence of advance notice to find a lack of good faith. The trial court noted: "The facts of the present case are indistinguishable in any meaningful way from the facts of *Smith, Batchelder & Rugg*." We agree. In *Smith, Batchelder & Rugg*, we upheld the master's finding that the restrictive covenant could not be reformed because it was not executed in good faith. The master's finding was supported by evidence that the employment agreements containing the restrictive covenants were not part of the oral negotiations, the employees had executed their agreements after they were hired, and the employees did not have a "full understanding" of the restrictive covenants in their employment agreements. *Smith, Batchelder & Rugg*, 119 N.H. at 685.

■ As in *Smith, Batchelder & Rugg*, the trial court in this case found that the plaintiffs "did not discuss the salesman agreement or the restrictive covenants with the [defendant] during his interview," and that the defendant was not presented with the agreement until six months after

he started working for the plaintiffs. Further, when the salesman agreement was finally presented to him, he "was informed his ability to retain his position was contingent upon signing the agreement," which, in its first order in 1999, the trial court found he was in no position to decline. Upon reviewing the record, we find evidence to support the trial court's determination that the plaintiffs acted in bad faith in executing the salesman agreement. Therefore, we see no reason to overturn the trial court's ruling.

Finally we address the court's decision to award damages in the absence of a bond. The plaintiffs argue that: (1) the prior injunction orders requiring no bond became the law of the case and cannot be relitigated; (2) the court's award of damages in the absence of a bond was an error of law; (3) an award of damages in the absence of a bond is erroneous as a matter of equity; and (4) the evidence does not support an award of damages.

Superior Court Rule 161 states:

> Unless the Court, for good cause shown, shall otherwise order, no restraining order or preliminary injunction shall issue except upon the giving of an injunction bond by the applicant . . . for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Superior Court Rule 163 requires:

> Whenever an injunction is issued without notice to, or appearance by, the adverse party (except in marital cases), the party at whose request it is issued, ordinarily shall, and in any case may, be required to give bond with sufficient sureties, conditioned by reason of the injunction, in case it shall appear that the injunction was improper.

We begin by addressing the plaintiffs' argument that the prior order not requiring a bond became the law of the case.

Questions once decided on appeal to this court are not ordinarily reexamined in the same case upon a subsequent appeal. The question decided on the first appeal is known as the law of the case, and becomes binding precedent to be followed in successive stages of the same litigation. Thus, where an appellate court states a rule of law, it is conclusively established and determinative of the rights of the same parties in any subsequent appeal or retrial of the same case. *Taylor v.*

*Nutting*, 133 N.H. 451, 454 (1990). As we have not previously stated any rule of law in this case, the law of the case doctrine is not applicable. *State v. Patterson*, 145 N.H. 462, 466 (2000).

The plaintiffs direct our attention to *Bailey v. Sommovigo*, 137 N.H. 526, 529 (1993), which supports the proposition that if a party acquiesces to a trial court's ruling, that ruling cannot be attacked on appeal. *See also Arnold v. City of Manchester*, 119 N.H. 859, 864 (1979). We recognize the validity of this proposition, but hold that it does not apply to the circumstances in this case. The defendant cannot be said to have acquiesced to the ruling at the preliminary hearing which failed to require a bond. In his objection to the plaintiffs' petition for a preliminary injunction the defendant requested a bond be posted. The trial court did not respond to the defendant's request in its May 17, 1999 order, stating only that "[t]he issue of any claimed monetary damages by either party as a result of the other party's actions will be heard at a later date."

The plaintiffs make much of the fact that the defendant did not specifically request the court to revisit the bond issue in his subsequent motion for reconsideration. We do not find this fact dispositive, however, because the trial court does not appear to have considered the bond issue in the first place. The court signed an order proposed by the plaintiffs, without making note of the "good cause" required by Rule 161. The court then denied the defendant's request for a $250,000 bond, without remarking upon it apart from its comment on "claimed monetary damages" cited above.

The trial court's order recognizing its error and reversing itself on the bond issue is also instructive in this regard. This order states that the prior order not requiring a bond "does not specifically address respondent's request for a bond and does not give any reasons for waiving the bond requirement." This characterization of its own order by the trial court bolsters our conclusion that the trial court failed to consider the bond issue. We, therefore, find that since the trial court never considered the bond issue, the defendant did not acquiesce to its ruling not requiring a bond to be posted, and therefore was correct to seek damages after the evidentiary hearing.

Next we address the plaintiffs' argument that the trial court's award of damages in the absence of a bond was an error of law. The plaintiffs argue that in the absence of a bond, the defendant's recovery is limited to taxable costs, or, alternatively, that because liability for an injunction is limited by the bond terms, there are no damages when there is no bond. The plaintiffs rely upon *Tilton v. Sharpe*, 84 N.H. 43 (1929), and *Rogers v.*

*Clough*, 76 N.H. 272 (1911), and their progeny, to support these arguments. They also point to the language of the May 7, 1999 order, drafted by their attorneys, and the May 17, 1999 order, which indicates that "the court will maintain in substance the restraining order that it issued against the defendant on May 7, 1999."

In *Tilton v. Sharpe*, this court denied a damage award to a defendant who had not requested a bond at the time of the injunction, stating "in the absence of such security, the damage claimed is not recoverable." *Tilton*, 84 N.H. at 48. In *Rogers v. Clough*, an injunction was granted on the condition that the plaintiffs give a $500 bond. This court found that the injunction order "limits both the amount the defendants can recover and the items of expense which are chargeable to the plaintiffs. In other words, the amount the defendants can recover in excess of their taxable costs and the items which compose it both depend on the terms of the order." *Rogers*, 76 N.H. at 274.

██ The present case is distinguishable, however, in that the trial court found it was error to not require a bond, and subsequently reversed itself by awarding damages. The trial court's order of March 30, 2004 stated:

> The Court finds it erred by failing to require [the plaintiffs] to post bond, absent a showing of "good cause," when it issued the preliminary injunction. Thus, relying on "the inherent power of the Court to review its own proceedings to correct error or prevent injustice," ... the Court proceeds as if a bond were posted and awards respondent damages accordingly.

(Citation omitted.) "[T]here can be no question of the inherent power of the Court to review its own proceedings to correct error or prevent injustice." *Croteau v. Harvey & Landers*, 99 N.H. 264, 267 (1954). The trial court noted, as cited above, that the prior order not requiring a bond "does not specifically address respondent's request for a bond and does not give any reasons for waiving the bond requirement." Further, the language in the May 17, 1999 order, that "[t]he issue of any claimed monetary damages ... will be heard at a later date," indicates that the trial court did not consider the bond issue because any damages would presumably be limited to the bond amount according to Superior Court Rule 161(c). *See Rogers*, 76 N.H. at 274. The trial court saw its error and corrected it. We agree with the trial court's finding that it was error not to require a bond, and uphold its decision to correct that error.

The plaintiffs object to the trial court's correction of its own error on the grounds that it contravenes the purpose of the temporary restraining order bond. The plaintiffs note that "[t]he bond effectively acts 'as a contract in which the court and plaintiff "agree" to the bond amount as the "price" of a wrongful injunction.'" (Quoting Note, *Recovery for Wrongful Interlocutory Injunctions Under Rule 65(c)*, 99 HARV. L. REV. 828, 833 (1986)).

The purpose of an injunction bond is to protect a party who has been wrongfully enjoined. SUPER. CT. R. 161(c). There is a long line of cases upholding the rule that a bond effectively limits the amount of damage a wrongfully enjoined party can recover. The decision to require an initial bond affects the substantive rights of the parties, in that it limits the plaintiff's maximum liability, and the defendant's maximum protection. Thus, when the initial decision not to require a bond is made outside the presence of the enjoined party, and not considered again until the merits hearing, as was the case here, the parties' substantive rights cannot rest upon those preliminary orders of the court. The trial court recognized its error in this regard, and corrected it, to protect the defendant's rights. Therefore, we hold it was not erroneous as a matter of law for the trial court to award damages in the absence of a bond.

The plaintiffs also argue that the award of damages in the absence of a bond was erroneous as a matter of equity. The substance of this argument seems to be that it was inequitable for the court to require the plaintiffs to pay damages after they had relied upon its ruling not to require a bond. The plaintiffs were responsible for the trial court's initial decision not to require a bond. They also received the May 17, 1999 order in which the court stated that the "issue of any claimed monetary damages by either party . . . will be heard at a later date." The plaintiffs should have recognized a continued potential for liability upon receipt of the May 17, 1999 order. We find that it was not erroneous as a matter of equity for the trial court to correct its error and award damages in the absence of an injunction bond.

Finally, the plaintiffs argue that the evidence presented does not support an award of damages. In reviewing damage awards, we consider the evidence in the light most favorable to the prevailing party, and we will not disturb the decision of the fact finder unless it is clearly erroneous. *Schneider v. Plymouth State College*, 144 N.H. 458, 465 (1999). The trial court awarded the defendant lost income in the amount of $17,463.20, and attorney's fees in the amount of $73,372.39.

Upon taking the job with A & B Lumber, the defendant informed his new employer of the non-compete agreement, and so was paid on a salary basis rather than on a commission basis. The lost income award was based upon the commissions the defendant would have earned for the twenty weeks he was under the injunction, using his historical commission earnings at Merrimack Valley as a measure. The attorney's fees award was based upon the testimony of the defendant's counsel. The defendant's counsel testified that the defendant was responsible for all of the attorney's fees. The trial court found that the attorney's fees claimed were reasonable, and the defendant's claim for lost income was reasonable. We see no reason to upset the trial court's determinations, as they are supported by the evidence.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DUGGAN and GALWAY, JJ., concurred.