2005 VT 95

## Systems & Software, Inc. v. Randy Barnes

[886 A.2d 762]

No. 04-401

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed August 19, 2005

---

*Wanda Otero-Ziegler* and *Stephen J. Soule* of *Paul Frank + Collins P.C.*, Burlington, for Plaintiff-Appellee.

*Pietro Lynn* and *Matthew Siebel* of *Lynn, Thomas & Mihalich, P.C.*, Burlington, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Defendant Randy Barnes appeals the superior court's order enjoining him from working for Utility Solutions, Inc. or any other direct competitor of his former employer, plaintiff Systems & Software, Inc., for a six-month period pursuant to the noncompetition agreement that he signed when he began working for plaintiff. He argues that the trial court should not have enforced the agreement because (1) plaintiff did not have a legitimate protectable interest; (2) the agreement contains unnecessary restrictions and imposes an undue hardship on him; (3) in any event, he did not violate the agreement; and (4) even if he did, plaintiff should be estopped from enforcing it. We affirm.

¶ 2. Plaintiff, a Vermont corporation located in Colchester, Vermont, is engaged in the business of designing, developing, selling, and servicing software that allows utility providers to organize data regarding customer information, billing, work management, asset management, and finance and accounting. In August 2002, plaintiff hired defendant as an at-will employee to become a regional vice-president of sales. At the time he commenced work for plaintiff, defendant signed a noncompetition agreement that, among other things, prohibited him — during his employment and for six months thereafter — from becoming associated with any business that competes with plaintiff. In April 2004, defendant voluntarily left his position with plaintiff and started a partnership with his wife called Spirit Technologies Consulting Group. Spirit Technologies' only customer was Utility

Solutions, Inc., which, like plaintiff, services municipalities and utilities nationwide with respect to customer-information-systems software.

¶ 3. On April 27, 2004, plaintiff filed a complaint and a request for injunctive relief that sought enforcement of the parties' noncompetition agreement. A hearing was held in June 2004, and on July 22, 2004, the superior court granted plaintiff an injunction. In its final judgment order dated August 6, 2004, the court enjoined defendant from working as a consultant or otherwise with Utility Solutions or any other direct competitor of plaintiff. Defendant appeals from that judgment. Pursuant to a provision of the parties' noncompetition agreement, the six-month noncompetition period will not begin until a final nonappealable judgment is rendered.

¶ 4. Like many other courts, this Court has adopted a position with respect to enforcement of noncompetition agreements similar to that set forth in § 188(1) of the Restatement (Second) of Contracts (1981), which provides that a restrictive covenant "is unreasonably in restraint of trade if (a) the restraint is greater than is needed to protect the promisee's legitimate interest, or (b) the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public." Cf. Restatement (Third) of Employment Law § 6.05 (Preliminary Draft No. 2, May 17, 2004) ("A court will enforce a restrictive covenant in an employment agreement to the extent that enforcement is reasonably tailored to protect a legitimate interest of the employer."). We have stated that "we will proceed with caution" when asked to enforce covenants against competitive employment because such restraints run counter to public policy favoring the right of individuals to engage in the commercial activity of their choice. *Roy's Orthopedic, Inc. v. Lavigne*, 142 Vt. 347, 350, 454 A.2d 1242, 1244 (1982); accord *Dicks v. Jensen*, 172 Vt. 43, 51, 768 A.2d 1279, 1285 (2001). Nonetheless, we will enforce such agreements "unless the agreement is found to be contrary to public policy, unnecessary for protection of the employer, or unnecessarily restrictive of the rights of the employee, with due regard being given to the subject matter of the contract and the circumstances and conditions under which it is to be performed." *Vt. Elec. Supply Co. v. Andrus*, 132 Vt. 195, 198, 315 A.2d 456, 458 (1974); accord *Fine Foods, Inc. v. Dahlin*, 147 Vt. 599, 603, 523 A.2d 1228, 1230 (1986).

¶ 5. Here, in arguing that the trial court erred by enforcing the parties' agreement, defendant first asserts that the agreement does not safeguard a legitimate interest of the employer because it was not

needed to protect trade secrets or confidential customer information. This argument fails because it is based on a faulty premise — that noncompetition agreements may be enforced to protect only trade secrets or confidential customer information. Most jurisdictions do not limit the scope of noncompetition agreements to trade secrets or confidential customer information, which are often protected by other law even in the absence of such agreements. See 15 G. Giesel, Corbin on Contracts § 80.16, at 141-42 (rev. ed. 2003) (explaining that employers may use noncompetition agreements to protect goodwill of business in addition to trade secrets and other confidential information, which most jurisdictions protect even in absence of covenant not to compete); see also 9 V.S.A. §§ 4601-4609 (Cum. Supp. 2004). Indeed, the recent draft of the third restatement on employment law expressly states that noncompetition agreements may protect legitimate employer interests such as customer relationships and employee-specific goodwill that are "significantly broader" than proprietary information such as trade secrets and confidential customer information. Restatement (Third) of Employment Law § 6.05 cmt. b ("[Section] 6.05 sometimes allows an employer contractually to prevent all competition by a former employee, even competition that does not make use of the employer's proprietary information.").

■ ¶ 6. It is not necessary in this case to establish the range of employer interests, beyond trade secrets and confidential customer information, that may be protected through noncompetition agreements. Here, the trial court found that plaintiff had a legitimate protectable interest, and the evidence supports the court's finding. The trial court found that during his employment with plaintiff, defendant had acquired inside knowledge about the strengths and weaknesses of plaintiff's products — knowledge that he could use to compete against plaintiff. As the court pointed out, both plaintiff and United Solutions, defendant's only client, served a small market of customers; thus, the loss of even a single contract could deprive plaintiff of revenue for many years, especially considering the need for service and software updates. Given these circumstances, we find no basis for overturning the trial court's conclusion that plaintiff had a legitimate protectable interest.

¶ 7. Defendant argues, however, that even assuming the parties' agreement protects a legitimate interest, the agreement is more restrictive than necessary to protect that interest. He contends that less drastic solutions were available to the trial court to fashion a more reasonable restraint on his employment. For example, he suggests

that the court could have simply prohibited him from soliciting plaintiff's current customers, or, at a minimum, prohibited him from dealing with noncooperative utilities, given that plaintiff has not dealt with cooperatives for nearly twenty years. According to defendant, a complete ban on competition is not only unduly restrictive, but it effectively prevents him from working in his field of expertise for six months, thereby imposing a hardship that far outweighs any potential harm to plaintiff.

¶ 8. We do not find these arguments persuasive, particularly in the context of this case, which does not present any of the hallmarks of an unequal bargaining relationship between employer and employee. Defendant is a sophisticated consultant, who accepted employment with plaintiff after working for one of plaintiff's competitors. At the time he was hired, plaintiff informed defendant that a condition of his employment was that he sign a covenant not to compete. Defendant signed the agreement, which explicitly provided that prohibiting him from competing with plaintiff for a six-month period following the parties' separation would not prevent defendant from earning a living. Defendant now claims hardship based on nothing more than a bald statement that he will be unable to work for six months if the agreement is enforced. We find no error in the court's decision not to invalidate the contract based on this unsupported claim.

¶ 9. Nor do we find error based on the superior court's refusal to rewrite the agreement to make it more favorable to defendant. Although a restraint on competition is easier to justify "if the restraint is limited to the taking of his former employer's customers as contrasted with competition in general," Restatement (Second) of Contracts § 188 cmt. g, employers "may seek to protect the good will of the business with [either] a general covenant not to compete or with a specific prohibition on contact with customers," 15 Giesel, *supra*, § 80.16, at 141 (footnote omitted).

¶ 10. "Determining which restraints are reasonable has not been an exact science." *Id.* § 80.6, at 68. The reasonableness of the restrictions "will vary by industry and will depend highly on the nature of the interest justifying the restrictive covenant." Restatement (Third) of Employment Law § 6.05 cmt. c. Generally, courts will uphold a contractual ban on an employee's post-employment competition if it would be difficult for an employer to determine when an employee is soliciting its customers. *Id.* §§ 6.05 cmt. c, 6.06 cmt. c ("Because it is essentially impossible to monitor an employee's 'use' of goodwill, this

interest will support a complete ban on competition as long as it is reasonably limited temporally and geographically.").

¶ 11. Here, the evidence demonstrates that plaintiff hired defendant to be a regional vice-president of sales and provided him access not only to existing customers but also to information concerning the strengths and weaknesses of plaintiff's products, the individual needs of the customers he served, and the prices paid by those customers for plaintiff's products and services. The superior court found that in the course of his employment with plaintiff, defendant acquired knowledge of plaintiff's software designs, customer base, marketing strategy, business practices, and other sensitive information revealing the strengths and weaknesses of plaintiff's software products. Because of the nature of plaintiff's business, which often involves customers initiating competitive bidding for contracts, it would be extremely difficult to monitor whether defendant was using the goodwill and knowledge he acquired while working for plaintiff to gain a competitive edge against plaintiff. Thus, the evidence supports the court's findings and conclusions, which, in turn, support its decision to enforce the agreement to the extent that defendant is prohibited for a six-month period from working for Utility Solutions or any other direct competitor of plaintiff.*

¶ 12. Defendant also claims that he has not competed with plaintiff or violated the covenant not to compete, but the evidence supports the court's findings to the contrary. The only customer of defendant's consulting firm was Utility Solutions, which directly competed against plaintiff for at least two different contracts. Further, shortly after defendant left plaintiff's employ, he represented Utility Solutions at a trade fair in a booth near plaintiff's booth and identified himself as Utility Solution's sales director. Moreover, the superior court found "not credible" defendant's claim that he was hired by Utility Solutions exclusively to market a new software product for two of the company's existing cooperative clients. Under these circumstances, the superior court's injunction was reasonable. Cf. *Dyar Sales & Mach. Co. v. Bleiler*, 106 Vt. 425, 433, 175 A. 27, 30 (1934) (granting relief based on

---

* We note that a provision in the parties' noncompetition agreement stays enforcement of the agreement pending resolution of any litigation on its viability. Defendant does not argue that the delay in enforcing the agreement because of this provision has negated any legitimate protectable interest that the plaintiff might have had in enforcing the agreement. Absent such an argument, with reference to the record, we presume that a protectable interest still exists.

violation of noncompetition agreement where employee had acquired close relations with employer's customers or knowledge of employer's business such that if he were to use those acquaintances or knowledge in competing business, irreparable harm would occur); *Ex parte Caribe, U.S.A., Inc.*, 702 So. 2d 1234, 1241 (Ala. 1997) (concluding that evidence was sufficient to support enforcement of agreement precluding former employee from competing against employer in break bulk cargo service business, given customer information and business knowledge employee acquired while working for employer).

¶ 13. We find unavailing defendant's reliance on *Concord Orthopaedics Professional Ass'n v. Forbes*, 702 A.2d 1273 (N.H. 1997), for the proposition that the superior court was required to narrow the parties' agreement to restrict defendant from soliciting only plaintiff's current customers. In *Forbes*, a doctor left the employ of a physician's group and then sued his former employer, claiming that a covenant banning him from competing with the group within a twenty-five-mile radius of its business was unenforceable. *Id.* at 1274-75. The court upheld the agreement with respect to patients the doctor had treated while working for the group, but determined that the group lacked any legitimate interest in preventing the doctor from competing for new patients in the area. *Id.* at 1276. The instant case is distinguishable because, while working for plaintiff, defendant acquired specific information concerning plaintiff's customers, products, and services that could allow him to gain an advantage in competing against plaintiff for new clients. That was not the situation in *Forbes*.

¶ 14. Finally, we find no merit to defendant's argument that plaintiff should be equitably estopped from seeking enforcement of the noncompetition agreement. In support of this argument, defendant contends that he accepted employment with plaintiff and signed the agreement based on plaintiff's false representations that (1) its software products were suitable for cooperative electric and gas utilities; and (2) it would not seek to enforce the covenant not to compete unless defendant went to work for a major competitor of plaintiff. The trial court specifically found that defendant's testimony regarding these alleged representations was not credible. The court found that plaintiff did not mislead defendant about the capability of its products before he signed the noncompetition agreement and did not suggest to defendant that it would selectively enforce the agreement. Thus, the court properly rejected defendant's equitable estoppel claim.

*Affirmed.*